HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Stephen L. Dreyfuss, Esq.
Robert B. Rosen, Esq.
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020

OPPENHEIMER WOLFF & DONNELLY LLP
Andrew S. Hansen, Esq. (MN #285894)
Heidi A.O. Fisher, Esq. (MN #320638)
Campbell Mithun Tower, Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402-3338
612.607.7000

Attorneys for Defendant Select Comfort Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID SPADE and KATINA SPADE, Individually and as Class Representatives on Behalf of Others Similarly Situated, | Civil Action No. |
| Plaintiff, | NOTICE OF REMOVAL |
| vs. | |
| SELECT COMFORT CORPORATION d/b/a SLEEP NUMBER, LEGGETT & PLATT, INCORPORATED, and John Doe Individuals and Businesses 1-20, | |
| Defendant. | |

Select Comfort Corporation ("Select Comfort") files this Notice of Removal under

28 U.S.C. §§ 1332 and 1453 to effect removal of the above-titled action to the United States

District Court for the District of New Jersey from the Superior Court of New Jersey, Law

Division, Civil Part, Ocean County.

and costs.  28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(6).  Because all of these requirements have been established, federal jurisdiction exists over this case.

**A.**     **28 U.S.C. § 1332(d)(2)(A)—Minimal Diversity**

5.     Under CAFA, only minimal diversity is required, meaning that diversity exists between the parties if any member of the plaintiffs' class is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(A).  Here, Plaintiffs' complaint avers that they are residents of the State of New Jersey, and upon information and belief, Plaintiffs are also citizens of New Jersey. (Exhibit A (Compl.) ¶ 5.)  Defendant Select Comfort is a Minnesota corporation with its principal place of business in Minnesota. (*Id.* ¶ 6.)  Defendant Leggett & Platt is a Missouri corporation with its principal place of business in Missouri. (*Id.* ¶ 7.)

6.     Therefore, Plaintiffs and Defendants are citizens of different states and the minimal diversity requirement is satisfied.

**B.**     **28 U.S.C. § 1332(d)(5)(B)—One Hundred Putative Class Members**

7.     Plaintiffs purport to bring this class action against Select Comfort only, and as to the TCCWNA violations only, based on certain alleged technical deficiencies in the contract language used as part of the sale and purchase of their bed from Select Comfort. (*Id.* ¶¶ 79–125.)  Plaintiffs purport to bring this action on behalf of "all other persons similarly situated to plaintiff(s) and who were issued/received contracts of the same kind and in the same way as plaintiff(s)." (*Id.* ¶ 100.)  Therefore, to qualify as a member of the class, an individual need only have received a sales contract from Select Comfort in New Jersey that is alleged to be technically deficient in New Jersey. (*Id.*)

8.     Plaintiffs propose a class of "all persons who received contracts in the State of New Jersey from a period six years prior to the filing of the complaint." (*Id.* ¶ 104.)

9.     From 2009 through 2014, Select Comfort issued approximately 76,239 separate order numbers, each correlating to a separate sales contract, for furniture products

purchased within the State of New Jersey. (Exhibit B (Declaration of Heather Somers ("Somers Dec.")) ¶ 3.)  Of those, 50,038 were for mattresses.  (*Id.*) Even assuming that multiple orders were made by some putative class members, these numbers far exceed the one hundred purported class members required to establish CAFA diversity.

**C.      28 U.S.C. § 1332 d(6)—Aggregate $5 Million Amount in Controversy**

10.     Plaintiffs have sought to avoid CAFA jurisdiction by pleading that "[t]his matter does not invoke CAFA, since the sums sought by the class members and the matter in controversy does not exceed the sum or value of $5,000,000, exclusive of interest and costs." (Ex. A (Compl.) ¶ 126.)

11.     This case meets the minimum CAFA jurisdiction threshold with legal certainty. Federico v. Home Depot, 507 F.3d 188, 196 (3d Cir. 2007).  Therefore, it is removable.

12.     Plaintiffs allege that "the NJTTCA provides that any person who violates the act 'shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of plaintiff(s), together with reasonable attorney's fees and court costs.  N.J.S.A. 56:12-17.'" (Ex. A (Compl.) ¶ 95.)

13.     For the six years between 2009 and 2014, Select Comfort sold in excess of $109 million in furniture products, of which $92 million were mattresses, in the State of New Jersey.  (Ex. B (Somers Dec.) ¶ 4.)  Accordingly, this case far exceeds the CAFA threshold of $5 million.

14.     Plaintiffs seek a judgment against Select Comfort "for a statutory penalty of at least $100 for each TCCWNA violation, injunctive relief to end the aforesaid illegal misconduct, attorney's fees, interest, costs of suit and any other legal and equitable relief that the Court deems appropriate." (Ex. A (Compl.) ¶ 131.)

15.     Multiplying the $100 penalty Plaintiffs seek by the number of mattress orders/contracts at issue (50,038), the amount in controversy exceeds $5 million.  Multiplying the

$100 penalty Plaintiffs seek by the number of contracts for all furniture products (76,239), the amount in controversy far exceeds the $5 million minimum threshold for CAFA jurisdiction.

16.     Plaintiffs also seek attorneys' fees, which are properly aggregated and considered for purposes of determining the amount in controversy under CAFA. See 28 U.S.C. § 1332(d)(6).

**D.      CAFA's Exclusions Do Not Apply to this Action**

16.     Plaintiffs bear the burden of showing that an exception to CAFA jurisdiction applies.  Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 153–54 (3d Cir. 2009).  No such exception applies here.

17.     The exceptions to CAFA jurisdiction only apply if at least one defendant or a primary defendant is a citizen of the State in which the action was originally filed.  See 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(A)(i)(II)(cc), 1332(d)(4)(B).  Since neither defendant is a citizen of New Jersey, the exceptions to CAFA jurisdiction do not apply.

**E.      Leggett and Platt Has Consented to Removal**

18.     While not required under CAFA, 28 U.S.C. § 1453(b), Select Comfort's co-defendant, Leggett & Platt, Incorporated, has consented to removal of this action to this Court by executing the Consent for Notice of Removal.  (Exhibit C.)

### III.     REMOVAL STATUTE COMPLIANCE

19.     The Notice of Removal was properly filed in the United States District Court for the District of New Jersey because the Superior Court of New Jersey, Ocean County is located within this judicial district.  See 28 U.S.C. § 1441(a).

20.     Select Comfort was served with this lawsuit on February 11, 2015. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), since it has been filed within thirty (30) days of service.

21.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon Select Comfort in this action are attached hereto as Exhibit A.

22.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and counsel for Defendant Leggett & Platt, and a copy, along with a Notice of Filing of the Notice of Removal, is being filed with the clerk of the Superior Court of New Jersey, Ocean County.

**IV.     <u>CONCLUSION</u>**

Select Comfort respectfully requests that this Court exercise jurisdiction over this action and enter any orders and grant any relief as may be necessary to secure removal and prevent further proceedings in this matter in the Superior Court of New Jersey.

Respectfully submitted

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP

By:   s/ Stephen L. Dreyfuss
                STEPHEN L. DREYFUSS
                ROBERT B. ROSEN
                Members of the Firm

Dated:    March 11, 2015

OPPENHEIMER WOLFF & DONNELLY LLP
Andrew S. Hansen, Esq. (MN #285894)
Heidi A.O. Fisher, Esq. (MN #320638)

Attorneys for Defendant Select Comfort Corporaton

6

# EXHIBIT      A

*Served by BCSO*
*2/11/15*

Lewis G. Adler, Esquire
ID No. 023211985
26 Newton Avenue
Woodbury, New Jersey 08096
(856) 845-1968
Lead Counsel for the Plaintiff

Law Office of Paul DePetris
Paul DePetris
ID No. 005821996
703 Stokes Road, Suite 9
Medford, New Jersey 08055
(609) 714-2020

| | |
|---|---|
| Plaintiff | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| David Spade and Katina Spade, H/W, | : OCEAN COUNTY |
| individually and as a class representative | : |
| on behalf of others similarly situated | : |
| | : |
| vs. | : |
| | : DOCKET NO.: L-1579-14 |
| Defendant | : |
| | : CIVIL ACTION |
| Select Comfort Corporation d/b/a | : |
| Sleep Number, Leggett & Platt Incorporated | : |
| and John Doe Individuals and Businesses | : |
| 1-20 | : **SUMMONS** |

*From The State of New Jersey To The Defendant(s) Named Above:  Select Comfort Corporation d/b/a Sleep Number*

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the [Clerk of the Superior Court] Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named

above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

Dated: 2/3/15

/s/ Donald F. Phelan
CLERK, SUPERIOR COURT OF NEW JERSEY

*Name of defendant to be served:*
*Address for Service:*

Select Comfort Corporation d/b/a Sleep Number
9800 59th Avenue
Plymouth, Minnesota 55442

Jasper County Sheriff's
231 S. Main St.
Carthage, MO 64836

@ 417-358-8177

#45.00    Dony

ATTN: Civil Process

612-348-3800

Hennepin County Sheriff
Minneapolis City Hall
350 S. 5th Street
Room 30
Minneapolis, MN
55415

## *Lewis G. Adler, Esquire*
### *Attorney at Law*
26 Newton Avenue • Woodbury, NJ 08096 • (856) 845-1968 • Fax: (856) 848-9504

January 28, 2015

Jasper County Sheriff's Office
ATTN: Civil Process
231 S. Main Street
Carthage, Missouri 64836

RE:  Spade vs. Select Comfort Corp
     Docket No.: L-000151-15

Dear Sir/Madam:

Please find enclosed an original and one (1) copy of the Summons and Complaint with regard to the above-captioned matter.  Please serve on the following Defendants:

        Leggett & Platt, Incorporated
        1 Leggett Road
        Carthage, Missouri, 64836

Please forward the Affidavit of Service back to my office in the envelope provided.  Also enclosed, please find this firm's check in the amount of $45.00 for fees.  Thank you for your cooperation and attention in this matter.

Truly yours,


Lewis G. Adler, Esquire

LGA/dmm
Enclosure
cc: David & Katina Spade
    Paul DePetris, Esquire

Lewis G. Adler, Esquire
ID No. 023211985
26 Newton Avenue
Woodbury, New Jersey 08096
(856) 845-1968
Lead Counsel for the Plaintiff

Law Office of Paul DePetris
Paul DePetris
ID No. 005821996
703 Stokes Road, Suite 9
Medford, New Jersey 08055
(609) 714-2020

| | |
|---|---|
| Plaintiff | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| David Spade and Katina Spade, H/W, | : OCEAN COUNTY |
| individually and as a class representative | : |
| on behalf of others similarly situated | : |
| | : |
| vs. | : |
| | : DOCKET NO.: L-1579-14 |
| Defendant | : |
| | : CIVIL ACTION |
| Select Comfort Corporation d/b/a | : |
| Sleep Number, Leggett & Platt Incorporated | : |
| and John Doe Individuals and Businesses | : |
| 1-20 | : SUMMONS |

*From The State of New Jersey To The Defendant(s) Named Above: Leggett & Platt,
Incorporated*

      The plaintiff, named above, has filed a lawsuit against you in the Superior Court
of New Jersey. The complaint attached to this summons states the basis for the lawsuit.
If you dispute this complaint, you or your attorney must file a written answer or motion
and proof of service with the deputy clerk of the Superior Court in the county listed above
within 35 days from the date you received this summons, not counting the date you
received it. (The address of each deputy clerk of the Superior Court is provided.) If the
complaint is one in foreclosure, then you must file your written answer or motion and
proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box
971, Trenton, NJ 08625-0971. A filing fee payable to the [Clerk of the Superior Court]
Treasurer, State of New Jersey and a completed Case Information Statement (available
from the deputy clerk of the Superior Court) must accompany your answer or motion
when it is filed. You must also send a copy of your answer or motion to plaintiff's
attorney whose name and address appear above, or to plaintiff, if no attorney is named

above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

Dated: 1/28/15

/s/ Donald F. Phelan
CLERK, SUPERIOR COURT OF NEW JERSEY

*Name of defendant to be served:*
*Address for Service:*

*Leggett & Platt, Incorporated*
1 Leggett Road
Carthage, Missouri 64836

OCEAN COUNTY SUPERIOR COURT
OCEAN COUNTY COURTHOUSE
CIVIL LAW DIVISION
TOMS RIVER.   NJ 08754                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 929-2016
COURT HOURS  8:30 AM - 4:30 PM

                              DATE:    JANUARY 14, 2015
                              RE:      SPADE VS SELECT COMFORT CORP
                              DOCKET:  OCN L -000151 15

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON ARNOLD B. GOLDMAN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    001
AT:  (732) 288-7830 EXT 7830.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

                    ATTENTION:

                              ADLER               LEWIS       G
                              26 NEWTON AVENUE
                              WOODBURY            NJ 08096

JUAMH6

# Lewis G. Adler, Esquire
### Attorney at Law

26 Newton Avenue • Woodbury, NJ 08096 • (856) 845-1968 • Fax: (856) 848-9504

January 8, 2015

Superior Court of New Jersey
ATTN: Clerk – Law Division
120 Hooper Avenue
P.O. Box 2191
Toms River, New Jersey 08754

RE:    David and Katina Spade vs. Select Comfort Corporation, et al

Dear Sir/Madam,

Please find enclosed original and two (2) copies of the Complaint & Jury Demand with regard to the above-captioned matter.  Please forward a filed copy back to my office in the envelope provided.  Also enclosed, please find this firm's check in the amount of $250.00 for filing fees.  Thank you for your cooperation and prompt attention in this matter.

Truly yours,


Lewis G. Adler, Esq.

LGA/dmm
Enclosure
cc: David & Katina Spade
      Paul DePetris, Esquire



**Appendix XII-B1**

| CIVIL CASE INFORMATION STATEMENT (CIS)<br><br>Use for Initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE: ☐CK ☐CG ☐CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Lewis G. Adler; Paul DePetris | TELEPHONE NUMBER<br>(856) 845-1968 | COUNTY OF VENUE<br>Ocean |
|---|---|---|
| FIRM NAME (If applicable)<br>Lewis G. Adler, Esq.; Law Office of Paul DePetris | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>Lewis G. Adler - 26 Newton Ave., Woodbury, NJ 08096<br>Paul DePetris - 703 Stokes Rd., Ste. 9, Medford, NJ 08055 | RECEIVED & FILED<br>JAN 12 2015<br>SUPERIOR CT, OCEAN | DOCUMENT TYPE<br>Complaint<br><br>JURY DEMAND ☒ YES ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>David Spade And Katina Spade, h/w, plaintiffs | CAPTION<br>David Spade and Katina Spade, h/w, v. Select Comfort Corporation d/b/a Sleep Number, Leggett & Platt, Incorporated and John Doe Individuals And Businesses 1-20 |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>599 | HURRICANE SANDY RELATED?<br>☐ YES ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ Yes ☒ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☒ Yes ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ☒ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☒ YES ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION
PUTATIVE CLASS ACTION INVOLVING FEE SHIFTING CONSUMER STATUTES

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ Yes ☒ No | IF YES, FOR WHAT LANGUAGE? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

ATTORNEY SIGNATURE:

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151   NAME CHANGE
- 175   FORFEITURE
- 302   TENANCY
- 399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502   BOOK ACCOUNT (debt collection matters only)
- 505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506   PIP COVERAGE
- 510   UM or UIM CLAIM (coverage issues only)
- 511   ACTION ON NEGOTIABLE INSTRUMENT
- 512   LEMON LAW
- 801   SUMMARY ACTION
- 802   OPEN PUBLIC RECORDS ACT (summary action)
- 999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305   CONSTRUCTION
- 509   EMPLOYMENT (other than CEPA or LAD)
- 599   CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605   PERSONAL INJURY
- 610   AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621   UM or UIM CLAIM (includes bodily injury)
- 699   TORT – OTHER

**Track III - 450 days' discovery**
- 005   CIVIL RIGHTS
- 301   CONDEMNATION
- 602   ASSAULT AND BATTERY
- 604   MEDICAL MALPRACTICE
- 606   PRODUCT LIABILITY
- 607   PROFESSIONAL MALPRACTICE
- 608   TOXIC TORT
- 609   DEFAMATION
- 616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617   INVERSE CONDEMNATION
- 618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303   MT. LAUREL
- 508   COMPLEX COMMERCIAL
- 513   COMPLEX CONSTRUCTION
- 514   INSURANCE FRAUD
- 620   FALSE CLAIMS ACT
- 701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | | |
|---|---|---|---|---|
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | | 288 | PRUDENTIAL TORT LITIGATION |
| 271 | ACCUTANE/ISOTRETINOIN | | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 284 | NUVARING | | 296 | STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | | 601 | ASBESTOS |
| 287 | YAZ/YASMIN/OCELLA | | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**    ☒ Putative Class Action    ☐ Title 59

LEWIS G. ADLER, ESQ.
Attorney ID#: 023211985
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 845-1968
Fax #: (856) 848-9504
Email: lewisadler@verizon.net
Co-counsel for plaintiff(s)

LAW OFFICE OF PAUL DEPETRIS
Paul DePetris
Attorney ID #: 005821996
703 Stokes Rd., Ste. 9
Medford, NJ 08055
Tel. #: 609-714-2020
Email: paul@newjerseylemon.com
Co-counsel for plaintiff(s)



RECEIVED & FILED
JAN 1 2 2015
SUPERIOR CT., OCEAN

DAVID SPADE AND KATINA SPADE,
H/W, INDIVIDUALLY AND AS A CLASS
REPRESENTATIVE ON BEHALF OF
OTHERS SIMILARLY SITUATED,
                                    PLAINTIFF(S),
VS.
SELECT COMFORT CORPORATION
D/B/A SLEEP NUMBER, LEGGETT &
PLATT, INCORPORATED AND JOHN
DOE INDIVIDUALS AND BUSINESSES
1-20,
                                    DEFENDANT(S).

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
OCEAN COUNTY

DOCKET NO.: L- 8/51-15
CIVIL ACTION

**COMPLAINT AND JURY DEMAND**

DAVID SPADE AND KATINA SPADE, H/W, INDIVIDUALLY AND AS CLASS

REPRESENTATIVE(S) ON BEHALF OF OTHERS SIMILARLY SITUATED hereby

state(s) by way of complaint:

## ABBREVIATIONS USED IN THIS DOCUMENT

1. For brevity's sake, hereafter plaintiff(s) shall use the following abbreviated terms:

| Complete Term | Abbreviation |
|---|---|
| Plaintiff(s), David Spade And Katina Spade, h/w Collectively | Plaintiff(s) |
| David Spade Individually | David |
| Katina Spade Individually | Katina |
| Defendant(s)  Select Comfort Corporation d/b/a Sleep | Defendant(s) |

1

| | |
|---|---|
| Number, Leggett & Platt And John Doe Individuals And Businesses 1-20 Collectively | |
| Defendant(s) Select Comfort Corporation d/b/a Sleep Number individually | SCC |
| Defendant(s) Leggett & Platt, Incorporated individually | L&P |
| SCC's store #532 located in Ocean County, New Jersey | The store |
| The bed that is the subject of this dispute – a i10 King Sleep Number Bed, Mattress & Accoutrements purchased new | The bed |
| Plaintiff(s)' Complaint Filed In This Case | The Complaint |
| The Instant Civil Action | This Case Or The Case |
| The Members Of The Putative Class Identified Below In The Class Action Certification Allegations | The class members or the class |
| The Class Action Fairness Act, 28 U.S.C. § 1332 | CAFA |
| The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 To -18 | TCCWNA |
| New Jersey Uniform Commercial Code, N.J.S.A.. 12A:1-101, et seq. | The UCC |
| Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 USC § 2301, et seq. | MMWA |
| The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, Et Seq. | CFA |
| N.J.S.A. 56:8-2 | Section 2 |
| New Jersey Division Of Consumer Affairs | DCA |
| New Jersey Household Furniture And Furnishings Regulations, N.J.A.C. 13:45A-5.1 to -5.4 | HFR |
| 9 Geyser Place, Barnegat, Ocean County, New Jersey | The property or the house |
| Sleep Number Customer Order Form dated 4-25-13 | The contract |
| Sleep Number Adjustable Base 2-5-25 Warranty. | The warranty |
| Letter from Paul DePetris to defendant(s) dated 10-24-14 - i.e. the revocation of acceptance letter pursuant to N.J.S.A. 12A:2-608 | The revocation |
| The sale of the bed to plaintiff(s) via the store occurring on or about 4-25-13 | The sale |

**EXHIBITS REFERENCED IN COMPLAINT**

2.  Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

3.  Hereafter, plaintiff(s) shall rely upon and refer to the following exhibits attached to the complaint:[1]

    1)  Sleep Number Customer Order Form dated 4-25-13.

    2)  Sleep Number Adjustable Base 2-5-25 Warranty.

    3)  Letter from Paul DePetris to defendant(s) dated 10-24-14.

    4)  FlexFit+ Content Sheet.

### PARTIES

4.  Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

5.  Plaintiff(s) is/are husband and wife respectively and individual persons residing at 9 Geyser Place, Barnegat, Ocean County, New Jersey.

6.  Defendant(s) SCC d/b/a Sleep Number® (which is SCC's registered trademark and/or trade name) is a manufacturer, designer, marketer, assembler, distributor and/or retailer that manufactures and/or designs and/or assembles and/or distributes and/or sells at retail and/or wholesale Sleep Number® beds, bed foundations and bedding accessories with offices located at 9800 59th Avenue North, Plymouth, Minnesota 55442.

7.  Defendant(s) L&P is a manufacturer, designer, marketer, assembler, distributor and/or retailer that manufactures and/or designs and/or assembles and/or

---

[1]Where necessary to comply with R. 1:38-7, et seq. and/or R. 4:5-1, et seq., exhibits may be redacted to omit personal confidential identifying information.  Where indicated, exhibits may be but portions of the documents identified.

3

distributes and/or sells at retail and/or wholesale and/or conceives and/or produces a diverse array of products that can be found in most homes, offices, and vehicles with offices located at P.O. Box 757, 1 Leggett Road, Carthage, Missouri 64836.

8. John Doe Businesses And Individuals 1-20 is/are fictitious defendant(s) who are entities and/or individuals, including but not limited to individuals or entities who have yet to be identified by plaintiff(s) but whose identity may be revealed during the period of discovery that shall occur in future relative to this action and who may be liable for plaintiff(s)' damages as referenced herein or who are known but not presently considered to be indispensable parties relative to this matter. Such individuals/entities may include but are not necessarily limited to warrantors, guarantors, manufacturers, designers, marketers, assemblers, distributors, retailers, contractors, inspectors, subcontractors, independent contractors, home improvement companies or corporations, construction companies or corporations, suppliers, agents, officers, directors, managing members, employees, home repair technicians, service personnel, collectors, publishers, distributors and the like and/or workmen/employees/agents/representatives of the other defendant(s) named herein.

9. Unless otherwise noted below, all allegations set forth below are directed against all defendant(s) named herein.

### FACTUAL ALLEGATIONS

### GENERAL BACKGROUND REGARDING THE PARTIES

4

10. Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

11. SCC is a business founded more than 20 years ago which designs, manufactures, markets and supports a line of adjustable-firmness mattresses featuring air-chamber technology, branded the Sleep Number® Bed, As Well As Bases And Bedding Accessories. Sleep Number® products are sold through its approximately 400 company-owned stores located across the United States; select bedding retailers; direct marketing operations; and online at www.sleepnumber.com.

12. The store is one of SCC's New Jersey retail stores, which is located in Ocean County, New Jersey. See exhibit 1.

13. At all times relevant hereto, SCC operated the store.

THE SALE

14. Defendant(s) manufactured and/or designed and/or assembled and/or distributed and/or offered for sale and/or sold at retail and/or wholesale and/or conceived and/or produced the bed and/or offered/provided warranties/warranty service associated therewith.

15. On or about 4-25-13, plaintiff(s) purchased the bed from defendant(s) and/or defendant(s)' agents or representatives via the store. See exhibit 1.

16. Plaintiff(s) paid SCC approximately $9,378.48 for the bed's purchase. See exhibit 1.

17. In connection with the sale, defendant(s) offered and/or provided and/or issued the contract and the warranty to plaintiff(s). See exhibits 1 & 2.

5

## THE BED'S EXPRESS WRITTEN WARRANTY

18. In connection with the sale, defendant(s) or defendant(s)' agents or authorized representatives issued plaintiff(s) with the warranty – consisting of a written warranty covering the bed and its components.  See exhibit 2

19. The warranty refers to both Sleep Number® – SCC's trade name and/or registered name – and to L&P.  See exhibit 2.

20. The warranty declares that "Leggett & Platt, Incorporated ('L&P') warrants this adjustable bed to the consumer who is the original purchaser, subject to the terms and conditions set forth herein."  See exhibit 2.

21. The warranty provides the following contact information:  "CONTACT INFORMATION:  Sleep Number Customer Service Department, 9800 59th Avenue North, Minneapolis, MN 55442, 800-728-9298."   See exhibit 2.

## THE UNSUCCESSFUL REPAIR ATTEMPTS TO THE BED

22. The bed's FlexFit Plus feature allows customers to raise and lower the head and foot portions of the mattress with a remote control (the remote control is the only way to activate it).   This feature (with a base sold with the bed), cost plaintiff(s) an additional $4,300.00 over the price of the bed without said feature and base.

23. On or about 5-29-14, plaintiff(s) took delivery of the bed at the property, with defendant(s)' workmen delivering and setting up the bed there.

24. After taking delivery, plaintiff(s) experienced two distinctly different problems with the bed, as follows:  (1) operation of the bed's mattress – a shifting problem, for which SCC made unsuccessful repair attempts to the bed twice; (2) the mechanics of the bed – which according to SCC, is serviced by L&P and

6

which they repeatedly made unsuccessful repair attempts to repair.   When the
bed malfunctioned, a cracking sound from the platform was/is audible.

25. Within a few weeks of taking delivery of the bed, upon using the bed's FlexFit
Plus feature to raise the head and foot of the mattress, plaintiff(s) noticed that
only one side of the mattress responded to the remote control.  Accordingly,
plaintiff(s) lowered the bed to the flat position and tried to raise it again,
whereupon it worked correctly.

26. Approximately two weeks thereafter, plaintiff(s) experienced the same problem.
Accordingly, at that time, plaintiff(s) changed the batteries in the bed's remote
control and the bed thereafter seemed to work when plaintiff(s) tried it again.

27. Several weeks later, the same problem occurred again. This time, after
lowering the bed to the flat position and trying to raise it again, the bed did not
perform correctly.   Accordingly, plaintiff(s) contacted SCC to complain about the
mattress shifting and that it was not responding to the remote correctly.

28. In response, SCC sent a serviceman to inspect the mattress.   SCC thereafter
told plaintiff(s) that the bed's mechanics were an "L&P problem".

29. A serviceman from SCC drilled holes in the bed's base, which was supposed to
prevent the mattress from shifting.  However, that repair attempt, as with all
others performed to the bed, failed to remedy the bed's problems.

30. When plaintiff(s) contacted L&P, in response, on or about 9-6-13, L&P sent out
a serviceman, Gene Donat, who incorrectly claimed that the problem could
have been due to plaintiff(s)' ceiling fan, TV remote and their wireless internet
connection.

7

31. On 10-2-13, the serviceman from L&P came to service the bed again.  He changed the FlexFit Plus from 2 motors - 1 operating on each side of the bed - to 1 motor, with a 'V' connection wire to control both sides of the bed simultaneously. This repair attempt was supposed to correct the problem but failed to do so.

32. Accordingly, on 10-14-13, the aforesaid serviceman returned to the consumer's home to perform yet another repair attempt to the bed.  On this occasion, the aforesaid serviceman changed more parts on the bed, one of which may have been a motor.

33. Nevertheless, the problem persisted intermittently.   Accordingly, on 3-26-14, plaintiff(s) contacted SCC and reported the problems to 2 women employed therewith or working therefor - Lisa and Theresa.

34. In response to said complaint, SCC sent a technician, to replace the mattress cover and a technician was dispatched from L&P on two additional dates to replace more parts on the bed (which apparently also included its motor).

35. In all, there were 3 different repair attempts made to the bed during April, 2014, as follows:  4-1-14, 4-7-14 and 4-15-14.

36. On 4-15-14, a technician told plaintiff(s) that "everything was new" and proceeded to demonstrate the bed to plaintiff(s), whereupon it again malfunctioned.   The technician looked under the bed and told plaintiff(s) that the technician forgot to connect something on the bed.

37. Plaintiff(s) were never given any service orders or receipts when the bed was serviced.  However, one or more of plaintiff(s) signed an electronic pad when a

serviceman or technician completed their repair attempts.

PLAINTIFF(S)' REVOCATION OF ACCEPTANCE OF THE BED

38. Plaintiff(s) retained counsel relative to this dispute and, via a letter addressed

to defendant(s) dated 10-24-14, plaintiff(s) revoked acceptance of the bed

pursuant to N.J.S.A. 12A:2-608 and requested defendant(s) to make

arrangements with plaintiff(s)' counsel to: (1) accept the return of the bed; (2)

provide plaintiff(s) a full refund of all payments made to date on the bed's

lease/purchase agreement - $9,378.48; and (3) pursuant to the MMWA,[2] pay

plaintiff(s)' attorney's fees accrued to date relative to this matter of $2,500.00.

See exhibit 3.

39. However, to date, defendant(s) failed to provide the aforesaid relief.

SCC'S ILLEGAL CONTRACT LANGUAGE

40. In connection with the sale, SCC issued plaintiff(s) the contract as aforesaid.

41. The DCA adopted the HFR. See N.J.A.C. 13:45A-5.1, et seq.

42. The HFR state, in pertinent part: "For purposes of this rule, "household furniture"

includes, but is not limited to, furniture, major electrical appliances, and such

items as carpets and draperies." See N.J.A.C. 13:45A-5.1.

43. The Farlex® online free dictionary defines the term "furniture" as follows: "1. The

movable articles in a room or an establishment that make it fit for living or

working. 2. Archaic Necessary equipment, as for a saddle horse or sailing ship."

http://www.thefreedictionary.com/furniture (citing American Heritage® Dictionary

of the English Language, Fifth Edition. (2011).

---

[2]See 15 U.S.C. § 2310.

44. The bed is a movable article that was placed in plaintiff(s)' bedroom so as to make it fit for living.

45. Accordingly, the bed meets the HFR's definition of household furniture.

46. The HFR apply to any person selling household furniture: (1) in or from New Jersey; or (2) into New Jersey from a location outside the State of New Jersey. N.J.A.C. 13:45A-5.3.

47. SCC meet the definition of any person selling household furniture (and other defendant(s) such as the Doe defendant(s) may likewise meet such definition).

48. The HFR state, in pertinent part: "13:45A-5.4 VIOLATIONS; SANCTIONS Without limiting the prosecution of any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., any violation of the provisions of this subchapter shall be subject to the sanctions contained in said Consumer Fraud Act." N.J.A.C. 13:45A-5.4.

49. The HFR state, in pertinent part: "Section 13:45A-5.3 Contract form; delayed delivery (a) The contract forms or sales documents shall conspicuously disclose the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1 and shall contain, on the first page of the contract form or sales document, the following notice in ten-point bold face type: **If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date.** (b) The provisions of this subchapter shall apply to any person who sells household furniture in or from the State of New

10

Jersey or to any person located outside of the State of New Jersey who sells household furniture into this State. (c) It shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable."

50. The language required by N.J.A.C. 13:45A-5.3 conspicuously disclosing the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1 refers to the following language of that section of the HFR: "Section 13:45A-5.1 Delivery practices; generally (a) Any person who is engaged in the sale of household furniture for which contracts of sale or sale orders are used for merchandise ordered for future delivery shall: 1. Deliver all of the ordered merchandise by or on the promised delivery date; or 2. Provide written notice to the consumer of the impossibility of meeting the promised delivery date. The notice shall offer the consumer the option to cancel said order with a prompt, full refund of any payments already made or to accept delivery at a specified later time. Said written notice shall be provided prior to the delivery date. (b) In the event a seller fails to deliver all of the ordered merchandise on the promised delivery date and makes only a partial delivery, the seller shall comply with the notice requirement of (a) above. Said notice shall offer the consumer the option of cancelling the order with a prompt, full refund of any payments already made or accepting delivery of the balance of the ordered merchandise at a specified later date. (c) Failure to comply with (a) above shall constitute a deceptive

practice under the Consumer Fraud Act.  (d) For purposes of this rule, "household furniture" includes, but is not limited to, furniture, major electrical appliances, and such items as carpets and draperies. (e) For the purposes of this section, delivery of furniture or furnishings that are damaged or that are not the exact size, style, color or condition indicated on the sales contract, shall not constitute delivery as required by (a)1 above.  Upon receipt of such non-conforming merchandise, the consumer shall have the option of either accepting the furniture or of exercising any of the options set forth in (a)2 above.

51. The contract lacks the following mandatory notice in ten-point bold face type as required by N.J.A.C. 13:45A-5.3:   "If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date."

52. The contract lacks the language required by N.J.A.C. 13:45A-5.3 conspicuously disclosing the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1.  See exhibit 1.

53. Page 2 of the contract contains language that conflicts with N.J.A.C. 13:45A-5.3(c)(i.e., "[i]t shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable.") as follows:

- 30 Night In-Home Trial Policy:…Exclusions: The 30 Night In-Home Trial Policy does not apply to the purchase of Sleep Number® Limited Edition or Sleep Number® Special Edition mattresses, bases or sets or to the purchase of demo, display, refurbished or Factory Outlet warehouse closeout mattresses, bases or sets as these sales are final."

- Limited or Special Edition or Closeout Bed Purchases: No returns will be accepted on Sleep Number® Limited or Sleep Number® Special Edition mattress, base or set purchases. If, within 45 days of delivery, you are not satisfied, you are eligible for a onetime exchange to another Sleep Number® mattress, base or set You must contact us to authorize this exchange. You will be responsible for any price difference as well as shipping costs.

- Closeout Bed Purchases: No returns will be accepted on Sleep Number® closeout mattress, base or set purchases made prior to June 6, 2011 or Factory Outlet closeouts purchased at any time.

- Adjustable Bases: The FlexFif™ or FlexFitTM Plus Adjustable Base is not covered under the Select Comfort® 30 Night In-Home Trial policy. All sales of FlexFif™ or FlexFit Plus Adjustable Bases are final. No returns or exchanges will be authorized or accepted.

- Upholstered Beds: The Upholstered Bed Collection is not covered under the Select Comfort® 30 Night In-Home Trial policy. Because this is a made-to-order item, all sales are final and no returns or exchanges will be authorized or accepted.

13

- Sleep Number Bedding Collection Exchange-only Policy: Within 30 days of receiving your Bedding Collection product, you may exchange a product for a different Bedding Collection purchase. Exchanges will only be allowed 1-time per item purchased. Bedding Collection products can not be returned for a refund. You must provide proof-of-purchase. All sales are final on clearance items.

- Returns: No unauthorized returns are allowed. If you are returning your mattress, base or set purchase under the 30 Night In-Home Trial policy, you must contact our Customer Service Center (800-472-7185) to obtain a Return Merchandise Authorization (RMA) number before returning the bed to us. Once your authorized return has been completely received by us in a good and sanitary condition, we will reimburse the full purchase price of the items being returned less shipping or Home Delivery Service & Setup fees. Refunds will be issued to the original method of payment within approximately 21 days. Unauthorized returns will be destroyed and no credit given. You are responsible for the risk of loss and for shipping fees for returning or exchanging any product Home Delivery Return Services are available at an additional cost. Gift-With-Purchase promotional items: Any gift-with-purchase received with the purchase of selected mattresses and bed sets are promotional items. A mattress or bed set return under this promotion requires the accompanying return of the gift-with-purchase. If the gift-with-purchase is not returned, the retail value will be deducted from the mattress or bed set refund.

14

See exhibit 1, p. 2.

54. By including the aforesaid language in the contract which contradicts plaintiff(s)' rights under the HFR, the contract contains terms which violate or are contrary to the rights and responsibilities provided for by this rule and therefore, the contract is null and void and unenforceable.  N.J.A.C. 13:45A-5.3.

55. In addition, since the contract does not distinguish as to whether the bed consists in whole or part of demo, display, refurbished or Factory Outlet warehouse closeout mattresses, bases or sets or is a Limited or Special Edition or Closeout Bed or Gift-With-Purchase promotional item or a made-to-order item, plaintiff(s)' rights are left unexplained/unclear by the contract's language.

56. However, the contract does indicate that the bed includes an "Adj. base" and the consumers received from SCC a FlexFit™ content sheet and therefore the adjustable base exclusionary language cited above applies to the contract (i.e., "Adjustable Bases: The FlexFit™ or FlexFitTM Plus Adjustable Base is not covered under the Select Comfort® 30 Night In-Home Trial policy. All sales of FlexFit™ or FlexFit Plus Adjustable Bases are final. No returns or exchanges will be authorized or accepted.").

57. That language is not permitted by the HFR, which expressly states that "[i]t shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule." N.J.A.C. 13:45A-5.3(c).

15

58. Accordingly, by including the aforesaid language in the contract pertaining to adjustable base beds of which the bed is one, such language further contradicts plaintiff(s)' rights under the HFR, the contract contains terms which violate or are contrary to the rights and responsibilities provided for by this rule and therefore, the contract is null and void and unenforceable.  N.J.A.C. 13:45A-5.3.

59. The HFR state, in pertinent part:  "13:45A-5.2 CONTRACT FORMS; DATE OF ORDER a) The contract forms or sales documents shall show the date of the order and shall contain the following sentence in ten-point bold face type: The merchandise you have ordered is promised for delivery to you on or before (insert date or length of time agreed upon). b) The blank for the delivery date referred to in (a) above shall be filled in by the seller at the time the contract of sale is entered into by the parties or when the sales documents are issued, either as a specific day of a specific month or as a length of time agreed upon by the buyer and seller (for example, "six weeks from date of order"). The date for delivery shall not be pre-printed in the contract prior to the time the contract of sale is entered into by the parties or when the sales documents are issued."

60. In violation of N.J.A.C. 13:45A-5.2, the contract does not include the following mandatory language required by the HFR in ten-point bold face type:  "The merchandise you have ordered is promised for delivery to you on or before (insert date or length of time agreed upon)."   See exhibit 1.

61. Instead, page 1 of the contract has the following language preprinted in the contract:  "Estimated Sleep Number® Bed delivery will be within 2 weeks. Deliveries outside of the standard delivery area are estimated to be within 21

16

days. *Excludes factory outlet, demo, limited and special edition beds."   See exhibit 1.

62. Aside from violating the HFR by containing a preprinted delivery period (see N.J.A.C. 13:45A-5.1), the contract's aforesaid language does not specify with particularity the period for the date of the bed's delivery but rather, merely provides an estimated delivery period and disclaims that estimated time frame for certain types of merchandise (i.e., factory outlet, demo, limited and special edition beds) without specifying what category of merchandise the bed actually is (i.e., factory outlet, demo, limited and special edition beds).  See exhibit 1. N.J.A.C. 13:45A-5.1.

63. Accordingly, by including in the contract the language of the contract pertaining to the time for delivery of the bed, defendant(s) used a contract or sales agreement that contains terms which violate or are contrary to the rights and responsibilities provided for by this rule and therefore, the contract is null and void and unenforceable.  N.J.A.C. 13:45A-5.2; N.J.A.C. 13:45A-5.3.

## FACTS SUPPORTING CFA VIOLATIONS
## PREDICATED ON SCC'S HFR VIOLATIONS

64. Certain subsections of the CFA and regulations adopted by the DCA create per se violations, making merchants strictly liable for noncompliance.[3]  For example, the CFA empowers the attorney general to "promulgate such rules and regulations" necessary to accomplish the CFA's objectives.[4]  The HFR is one

---

[3].  Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977).

[4].  N.J.S.A. 56:8-4; Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 70 (1985).

such set of regulations. Unless the CFA subsection or regulation provides otherwise, intent to violate the CFA is not a prerequisite to liability for such per se violations.[5] The parties subject to the CFA subsections and regulations are assumed to be familiar with them.[6] A merchant's subjective good faith does not excuse technical noncompliance with CFA statutory subsections and administrative regulations.[7]

65. Both plaintiff(s) and defendant(s) meet the definition of "person" as set forth in N.J.S.A. 56:8-1(d).

66. As stated above, the contract violates the HFR in one or more ways.

67. As stated above, by including the aforesaid language in the contract which contradicts plaintiff(s)' rights under the HFR (e.g., N.J.A.C. 13:45A-5.2 & N.J.A.C. 13:45A-5.3), the contract contains terms which violate or are contrary to the rights and responsibilities provided for by this rule and therefore, the contract is null and void and unenforceable. N.J.A.C. 13:45A-5.3.

68. Accordingly, pursuant to N.J.A.C. 13:45A-5.3, plaintiff(s) seek a declaration that the contract is null, void and unenforceable and therefore, seek a refund of all sums paid under the contract.

69. As stated above, the HFR imposes per se CFA liability for violations of the HFR, as the HFR state, in pertinent part: "13:45A-5.4 VIOLATIONS; SANCTIONS Without limiting the prosecution of any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., any violation

---

5. Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 80 (Law Div. 2005).
6. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18-19 (1994).
7. Truex v. Ocean Dodge, Inc., 219 N.J. Super. 44, 49 (App. Div. 1987).

of the provisions of this subchapter shall be subject to the sanctions contained in said Consumer Fraud Act." Per N.J.A.C. 13:45A-5.4.

70. Where, as here, there exist substantial aggravating circumstances relative to a contract, plaintiff(s) have standing to bring a CFA action. See Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994).

71. Therefore, plaintiff(s) seek relief pursuant to the CFA.

72. Plaintiff(s) have an ascertainable loss of money or property under the CFA capable of being calculated within a reasonable degree of certainty and proximately caused by defendant(s)' aforesaid fraudulent conduct, as evidenced by the following: plaintiff(s) paid defendant(s) sums out of pocket that plaintiff(s) would not have paid but for defendant(s)' fraudulent conduct. For, plaintiff(s) paid SCC approximately $9,378.48 for the bed's purchase. See exhibit 1.

73. Since the sale was the product of consumer fraud, the price paid for the bed constitutes an ascertainable loss of money proximately caused by the aforesaid per se CFA violations predicated upon the HFR violations as aforesaid. See, e.g., Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496 (2010); Furst v. Einstein Moomjy, 182 N.J. 1, 16 (2004).

74. Where, as here, plaintiff(s) face a debt that is the product of consumer fraud and/or incur an out of pocket loss, such a debt/loss equates with an ascertainable loss sufficient to support liability under the CFA. See Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994); Thiedemann v. Mercedes-Benz USA, 183 N.J. 234 (2005).

75.  In addition, plaintiff(s) seek a statutory refund – that is, relief pursuant to the
     CFA's refund provision, which states: "Any person violating the provisions of the
     within act shall be liable for a refund of all moneys acquired by means of any
     practice declared herein to be unlawful.[8]  The refund of moneys herein provided
     for may be recovered in a private action or by such persons authorized to initiate
     actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 et seq.).[9]"

76.  The New Jersey Supreme Court explained the separate cause of action
     available for refunds as follows: "The CFA vests the Attorney General with
     jurisdiction to enforce its provisions through a variety of mechanisms, N.J.S.A.
     56:8-3 to -8, -11, -15 to -18, & -20, but it also provides individual consumers with
     a cause of action to recover refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble
     damages for violations, whether in good faith or otherwise, N.J.S.A. 56:8-19."
     Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255 (1997).

77.  Those seeking a statutory refund under the CFA are not required to prove an
     ascertainable loss because under the CFA's refund provisions, any party
     violating the CFA is liable for a refund of all money they acquired by means of the
     violation.  For, since the refund provisions do not refer to the ascertainable loss
     requirement of N.J.S.A. 56:8-19, the refund provision is independent of that
     requirement.  "The refund provision is a statutory remedy, not based on the

---

[8] N.J.S.A. 56:8-2.11.
[9] N.J.S.A. 56:8-2.12.  The last reference in this provision to "P.L.1975, c. 376 (C. 40:23-6.47 et seq.)" refers to actions by the offices of the Department of Consumer Affairs.

proving of any damages."[10]   Therefore, a CFA claimant is "entitled to the

refund regardless of whether he suffered any ascertainable loss. There is no

causal relationship needed to be eligible for a refund."[11] The refund provisions

allow CFA claimants to recover a refund where they prove a deceptive

business practice but are unable to prove an ascertainable loss.  The CFA's

application is not limited only to situations where the attempt to deceive was

successful or actually resulted in injury.[12] To recover a refund from a

merchant, the CFA claimant need only prove that the merchant acquired the

money sought by means of any practice violating the CFA.[13]  The party

receiving a CFA refund is also entitled to a mandatory award of counsel fees,

filing fees and costs.[14]  However, treble damages may not be available in New

Jersey state court on money refunded pursuant to the CFA's refund provisions.[15]

78.   Plaintiff(s) also seek a refund and/or other equitable relief pursuant to N.J.S.A.

2A:32-1, which states:  "(w)henever there is a fraud in the execution or

consideration of a contract, the person defrauded at any time thereafter may

---

[10].  Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 89 (Law Div. 2005).

[11].  Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 89 (Law Div. 2005); accord Block v. Plosia, 390 N.J. Super. 543, 551 (App. Div. 2007).

[12].  Hyland v. Zuback, 146 N.J. Super. 407, 415 (App. Div. 1976).

[13].  N.J.S.A. 56:8-2.11.

[14].  Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 89 (Law Div. 2005) (citing BJM Insulation & Constr., Inc. v. Evans, 287 N.J. Super. 513 (App. Div. 1996)).

[15].  See Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 77, 80 (Law Div. 2005), an unlicensed landscape irrigation contractor sued a consumer to collect an unpaid bill for a sprinkling system and the consumer counterclaimed, alleging that the contract was not enforceable because the contractor violated the CFA. While entitled to a refund, claimant failed to prove ascertainable loss and the court refused to award the consumer treble damages by trebling the amount of the refund.

institute a civil action, to recover the money owing on such contract although, by its terms, the debt contracted or the money secured to be paid thereby is not then due or payable; and the person defrauded may, upon discovery of the fraud, either rescind the contract entirely and recover the money or property obtained by the fraud or, sue on the contract to recover thereon."[16]  The CFA expressly provides that the rights, remedies and prohibitions provided by the CFA are in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or New Jersey statutes.[17] The CFA should not be construed to deny, abrogate or impair any such common law or State statutory right, remedy or prohibition, such as that afforded to fraud victims under N.J.S.A. 2A:32-1.[18] Therefore, plaintiff(s) may seek relief both pursuant to the CFA and N.J.S.A. 2A:32-1 (as well as pursuant to the TCCWNA – discussed below).

## FACTS SUPPORTING SCC'S VIOLATION OF THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT PREDICATED ON SCC'S HFR VIOLATIONS

79.  The TCCWNA is a remedial consumer statute and by passing it, the Legislature's intent was to expand rather than constrict the consumer's rights.[19]

---

[16]. N.J.S.A. 2A:32-1.
[17]. N.J.S.A. 56:8-2:13; Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255 (1997).
[18]. N.J.S.A. 56:8-2:13; Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255 (1997).
[19]See, e.g. Reves v. Ernst Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)(discussing Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)); Perez v. Rent-a-Center, Inc., 186 N.J. 188, 892 A.2d 1255 (2006) (noting that remedial statutes like the Retail Installment Sales Act ("RISA"), N.J.S.A. 17:16C-1 to -61 should be liberally construed  to achieve their salutary aims).

22

80.   The TCCWNA's legislative history states, in pertinent part: "Far too many consumer contracts, warranties, notices and signs contain provisions which clearly violate the rights of consumers.  Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." A-1660, p. 2 (as introduced May 1, 1980).

81.   Moreover, the sponsor's statement in the TCCWNA's legislative history states that the Legislature enacted TCCWNA to strengthen the CFA.[20]  Sponsor's Statement to A-1660 (as introduced May 1, 1980).

82.   Therefore, the TCCWNA's scope is best understood in its relation to other consumer protection statutes such as the CFA. The TCCWNA's legislative history speaks of holding all businesses liable for violations: "This bill prohibits businesses from offering or using provisions in consumer contracts, warranties, notices and signs that violate any clearly established right of a consumer." A-1660, p. 3 (as introduced May 1, 1980).

83.  The TCCWNA is a cumulative statute rather than an exclusive one: "The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and

---

[20]When interpreting a statute, the Court considers the entire legislative scheme of which the statute under review is a part. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 527 A2d 1368 (1987).  "Of the various materials that may reveal legislative intent, one of the most instructive is a statement by the sponsor of the act." Panzino v. Cont'l Can Co., 71 N.J. 298, 302,  364 A.2d 1043 (1976).

nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition." N.J.S.A. 56:12-18; Shelton v. Restaurant.com, Inc., 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-18).

84. The TCCWNA states, in pertinent part: "Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions[.]  No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to 'The New Home Warranty and Builders' Registration Act,' P.L.1977, c. 467 (C. 46:3B-1 et seq.)." N.J.S.A. 56:12-15.

85. The TCCWNA states, in pertinent part: "Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer,

together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him." N.J.S.A. 56:12-17; Shelton v. Restaurant.com, Inc., 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-17).

86.   SCC and the does is/are sellers as defined by N.J.S.A. 56:12-15.  See also N.J.A.C. 13:45A-17.2.

87.   Plaintiff(s) are consumers pursuant to N.J.S.A. 56:12-15.

88.   The documents are written consumer contracts, written consumer warranties and/or written consumer notices subject to the TCCWNA.  N.J.S.A. 56:12-15.

89.   The TCCWNA applies to all of the aforesaid.[21]

90.   Moreover, New Jersey courts have held that a CFA violation constitutes a violation of a "clearly established legal right" for TCCWNA purposes and therefore, supports liability thereunder.  Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009); ("a consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA").

91.   Like this case, Bosland involved a seller's violation of a CFA regulation adopted by the DCA.  Bosland v. Warnock Dodge, Inc., 396 N.J. Super.

---

[21]"[T]he statute applies to more than merely contracts, but also to warranties, notices or signs."  DeHart v. US Bank, N.A., 811 F.Supp.2d 1038 (D.N.J., 2011).

267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009).[22]

92.   Likewise, when affirming the Appellate Division's decision in Bosland, the New Jersey Supreme Court approvingly noted:  "Having concluded that plaintiff's CFA claim should not have been dismissed, the Appellate Division also reinstated her TCCWNA claim, concluding that the complaint's CFA allegations also sufficed to support her claim that the contract violated a clearly established legal right.  Bosland, supra, 396 N.J. Super. at 278."   Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 547, 550, 964 A.2d 741 (2009).

93.   Therefore, where, as here, plaintiff(s) allege sufficient facts to establish a violation of a state regulatory provision (i.e., violations of the HFR – which are in turn per se CFA violations), such allegations are "sufficient to establish a potential violation of the TCCWNA because a consumer contract that violates a clearly established legal right . . . is also a violation of the TCCWNA."  Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009); see also United Cons. Fin. Serv. v. Carbo, 410 N.J. Super. 280, 306 (App. Div. 2009) ("This court has held that the act of offering a consumer contract that violates a legal right of a consumer under the law is sufficient to establish a violation of this statute." (citation omitted)).

---

[22] In Bosland, the violation at issue concerned the Automotive Sales Practices regulations, N.J.A.C. 13:45A-26B.1 to -26B.2. See Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79 (App. Div. 2007), aff'd, 197 N.J. 543 (2009).

94. Because defendant(s)' contract fails to state language expressly required by the HFR and includes language contradicting the language mandated by the HFR and includes language contradicting various rights afforded consumers under the HFR as aforesaid, such misconduct constitutes violations of the New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 to –18 (TCCWNA). For, as referenced above, the TCCWNA prohibits, among other things, a seller from entering into a contract with a consumer "which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller ... as established by State or Federal law at the time ... plaintiff(s) contract is signed...." N.J.S.A. 56:12-15. Therefore, the contract, when viewed with its aforesaid failures, violates TCCWNA.

95. When establishing a violation of TCCWNA, the claimant need not prove actual damages but only that "a contract or notice simply contains a provision prohibited by state or federal law . . . ." See Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006). For, the NJTCCA provides that any person who violates the act "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of plaintiff(s), together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

PLAINTIFF(S)' COUNSEL SERVE AS PRIVATE ATTORNEYS GENERAL

96. Plaintiff(s) hired counsel and one or more statutes pled herein provide for fee shifting for parties hiring counsel and prevailing under said statutes. See, e.g., N.J.S.A. 56:12-17; N.J.S.A. 56:8-19, 15 U.S.C. § 2310.

27

97. Accordingly, by representing plaintiff(s), plaintiff(s)' counsel serve plaintiff(s) as private attorneys general.   See Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 268 (1997).   Otherwise, private claimants (such as those under the TCCWNA and the CFA) would have to pay attorneys' fees and incur potentially considerable expense for a potentially small recovery.   See, e.g., Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 470 (App. Div. 1982)(discussing fee shifting under the CFA); Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 610 (App. Div. 1990), aff'd o.b., 124 N.J. 520 (1992) (citing Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598 (1989))(same); Furst v. Einstein Moomjy, 182 N.J. 1, 21 (2004)(same).

98. Since counsel for private fee shifting claimants such as plaintiff(s)' counsel act as private attorneys general, plaintiff(s) bringing a private action such as this case may seek the remedy of counsel fees for the statutory violations pled herein not only as those violations affect the named plaintiff(s) but also for other claimants. See, e.g., Laufer v. U.S. Life Ins. Co. in N.Y., 385 N.J. Super. 172, 185 (App. Div. 2006).

## CLASS ACTION CERTIFICATION ALLEGATIONS

## COMMON TO THE TCCWNA

## CAUSE OF ACTION PLED AGAINST SCC

99. Plaintiff(s) repeat all paragraphs set forth above as if set forth herein in full.

100. **As to the TCCWNA violations only**, plaintiff(s) bring this action pursuant to Rule 4:32 on behalf of plaintiff(s) and on behalf of the class members, with the class being composed of a class of all other persons similarly situated to

plaintiff(s) and who were issued/received contracts of the same kind and in the same way as plaintiff(s) (the contracts).

101. Defendant(s)' actions are not isolated.

102. Defendant(s)' actions have affected similarly situated individuals throughout the State of New Jersey.

103. Defendant(s) acted on grounds generally applicable to the class members, thereby justifying relief against defendant(s) for the class members as whole.

104. Plaintiff(s) propose a class as follows - all persons who received the contracts in the State of New Jersey from a period six years prior to the filing of the complaint.

105. Plaintiff(s) are members of the class that they seek to represent.

106. The class is believed to number thousands of persons and their joinder is impracticable, except by via a class action.

107. The disposition of the claims of the class in a class action will benefit both the parties and the Court.

108. There are questions of law and/or fact common to the class predominating over any question affecting only individual class members as to whether defendant(s) are liable to plaintiff(s) for violation of New Jersey law.   For instance, did defendant(s):

- Send/issue/give the class members the contracts in violation of New Jersey law?

29

109. Class certification is also appropriate because defendant(s) acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to plaintiff(s) and the class members.

110. Specifically, plaintiff(s) seek injunctive relief via a court judgment or order requiring an end to the unlawful practices and/or the issuance of a corrective notice to the class members.

111. Plaintiff(s)' claims are typical of the claims of the class insofar as named class representatives and the members of the class were similarly exposed to the statutory harms alleged herein and were similarly injured and/or face similar risks therefrom.

112. The proposed class representatives state a claim upon which relief can be granted that is typical of the claims of absent class members.   If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

113. Plaintiff(s) will fairly and adequately represent the interests of the class insofar that the plaintiff(s)' claims are typical of those of the class members.

114. Plaintiff(s) are committed to the vigorous representation of the class members.

115. Plaintiff(s) retained counsel experienced and skilled in consumer law and class action litigation.

116. Counsel agreed to advance the costs of the litigation contingent upon the outcome.

117. Plaintiff(s) have no conflict of interest in the maintenance of this class action.

118. If the matter is maintained as a class action, it shall provide for a fair and efficient adjudication of this dispute.

119. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual plaintiff(s) as class representatives.

120. Contrawise, especially in view of the small dollar amounts in controversy relative to the individual plaintiff(s)' claims, it would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.

121. Further, the maintenance of separate actions in lieu of the instant proposed class action would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

122. Contrawise, a single class action such as the instant proposed class action can determine the rights of all class members while economizing judicial resources.

123. Moreover, as plaintiff(s) invoked the TCCWNA and have pled a prima facie case for the violation of same, the policy goals behind the TCCWNA (and the HFR and CFA which are implicated by the TCCWNA violation) provide further reason for permitting class action certification of the instant action.

124. The benefits of adjudicating this case via a class action far outweigh any difficulties in management of the case as a class action.

125. Class action treatment of this case is a superior method for the fair and efficient adjudication of this dispute because:

- individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

- as a result, there has been no other litigation over the controversies herein;

- individual members of the class have no interest in prosecuting and controlling separate actions; and

- the proposed class action is manageable.

126. This matter does not invoke CAFA, since the sums sought by the class members and the matter in controversy does not exceed the sum or value of $5,000,000, exclusive of interest and costs.

## COUNT 1

## TRUTH-IN-CONSUMER CONTRACTS, WARRANTY AND NOTICE ACT

## PLED AGAINST SCC/DOES ONLY

127. Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

128. This count is pled as to plaintiff(s) and the class and against defendant(s) SCC and the does only.

129. As stated more fully above, the TCCWNA applies to plaintiff(s) and the class and defendant(s) and the documents.  N.J.S.A. 56:12-15.

130. Because the contract violates the HFR as aforesaid, such violations are actionable as violations of the TCCWNA.

131. Via this action, plaintiff(s) and the class seek relief pursuant to the TCCWNA.

WHEREFORE, Plaintiff(s) demand judgment against defendant(s) for a statutory penalty of at least $100.00 for each TCCWNA violation, injunctive relief to end the aforesaid illegal misconduct, attorney's fees, interest, costs of suit and any other legal and equitable relief that the Court deems appropriate.

### COUNT 2

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

### PLED AGAINST SCC/DOES ONLY

132. Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

133. This count is directed by plaintiff(s) only (and not the class) and against defendant(s) SCC and the does only.

134. Plaintiff(s) are "persons" as defined by N.J.S.A. 56:8-1(d).

135. Defendant(s) are "persons" as defined by N.J.S.A. 56:8-1(d).

136. The bed and/or services that defendant(s) provided to plaintiff(s) are "merchandise" as defined by N.J.S.A. 56:8-1(c).

137. Accordingly, under the facts alleged in this complaint, plaintiff(s) are persons entitled to the protection and remedies provided for by the CFA.

138. Defendant(s) engaged in one or more per se statutory subsection CFA violations as referenced above.

139. In light of the aforesaid, defendant(s) and/or their employees and/or servants and/or agents violated N.J.S.A. 56:8-1, et seq.

140. As a proximate result of defendant(s)' aforesaid misconduct, plaintiff(s) sustained an ascertainable loss capable of being calculated with a reasonable degree of certainty.

141. Further, pursuant to the CFA and the HFR and N.J.S.A. 2A:32-1, plaintiff(s) seek equitable relief in the form of a statutory and regulatory refund as aforesaid.

142. As set forth on the certification(s) made part of this pleading, plaintiff(s) complied with the requirements of N.J.S.A. 56:8-20, et seq.

143. Plaintiff(s) bring this action pursuant to N.J.S.A. 56:8-19 and in accordance therewith, seek all remedies available under the CFA, including but not necessarily limited to statutory treble damages pursuant to N.J.S.A. 56:8-19, recovery of ascertainable losses for loss of money and/or property pursuant to N.J.S.A. 56:8-19, a refund of all moneys acquired by means of any practice declared unlawful as permitted by N.J.S.A. 56:8-2.11-12, cancellation of any/all debts resulting from defendant(s)' fraud/misconduct, all statutory/equitable remedies afforded by N.J.S.A. 56:8-1, et seq. and/or the remedies afforded fraud victims under the common law and/or pursuant to N.J.S.A. 2A:32-1, et seq., injunctive relief and other legal and equitable relief as provided under said statute.

WHEREFORE, plaintiff(s) demand judgment against all defendant(s) named to this count individually and/or jointly and/or severally for: (1) Compensatory damages; (2) The remedies provided for under the contract and/or common law and/or any state and/or federal statutes pled herein, including any applicable injunctive/equitable relief, fees permitted by any applicable statue, court rule or common law authority or

consequential, incidental, nominal and expectation damages; (3) Lawful interest and court costs; and (4) Such other and further relief as the court shall deem equitable and just.

## COUNT 3

## BREACH OF WARRANTY AND VIOLATION OF THE MAGNUSON-MOSS WARRANTY—FEDERAL TRADE COMMISSION IMPROVEMENT ACT

### PLED AGAINST ALL DEFENDANT(S)

144. Plaintiff(s) repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

145. This count is brought on behalf of plaintiff(s) only (and not the class) and is pled against all defendant(s).

146. At the time of sale and/or thereafter, defendant(s) or their agents issued to plaintiff(s) express warranties and/or service contracts with the bed.

147. At the time of sale and subsequent repair, defendant(s) impliedly warranted that the bed was of merchantable quality and/or was reasonably fit and/or suitable for the purpose for which it was purchased.

148. Plaintiff(s) accepted the bed in the belief that the bed conformed to the aforesaid warranties and/or service contracts.

149. Defendant(s) expressly and/or impliedly warranted the labor that defendant(s) performed or caused to be performed and/or parts that defendant(s) replaced or caused to be replaced on the bed.

150. Plaintiff(s) relied on said warranties and/or service contracts and/or representations and believed them to be true and would not have purchased the

bed but for said warranties.

151. Following the sales transaction and numerous repair attempts, plaintiff(s) learned that the bed was/were not as warranted.  For, the bed, as originally delivered and/or subsequent to repair, exhibited problems that substantially impair the bed's value to plaintiff(s).

152. Plaintiff(s) performed plaintiff(s)' obligations under the aforesaid warranties and/or service contracts, including but not limited to plaintiff(s)' obligation to notify defendant(s) of problems that plaintiff(s) experienced with/exhibited by the bed and gave defendant(s) a reasonable time to correct and/or repair and/or address said problems and defendant(s) or their agents failed to correct and/or repair and/or address said problems in a reasonable time.

153. By misrepresenting the characteristics and/or capabilities and/or quality and/or fitness and/or condition and/or nature of the bed and/or failing to correct and/or repair and/or remedy the bed's problems within a reasonable time, defendant(s) breached their obligations under the aforesaid warranties and/or service contracts.

154. The limited repair remedies that defendant(s) provided to plaintiff(s) failed of their essential purpose, as defendant(s) were unable and/or unwilling to correct and/or repair and/or remedy the bed's problems within a reasonable time. Therefore, any disclaimers/limitations of liability contained in the warranty are null and void under the doctrine of failure of essential purpose.

155. Defendant(s)' failure to correct and/or repair and/or remedy the bed's problems within a reasonable time constitute a breach of defendant(s)' warranty

obligations, including but not limited to one or more of the following: (1) Breach of Express Warranty. (2) Breach of Implied Warranty of Merchantability. (3) Breach of Implied Warranty of Fitness For a Particular Purpose.

156. Since the contract in this case was predominantly for the sale of goods and the warranty pertained to goods, the UCC applies to this dispute.[23]

157. Pursuant to the UCC (N.J.S.A. 12A:2-608) and via plaintiff(s)' counsel, plaintiff(s) revoked acceptance of the bed and demanded a refund from defendant(s) pursuant to the UCC and/or MMWA. However, to date, defendant(s) refused to comply with said demand. See exhibit 3.

158. By way of this complaint, plaintiff(s) allege that defendant(s) committed a breach of warranty under the UCC and/or under that of any other jurisdiction whose law the Court finds applies to the instant action.

159. Plaintiff(s) are entitled to relief pursuant to N.J.S.A. 12A:2-608 and therefore, seek the remedy of revocation of acceptance in accordance therewith.

160. Plaintiff(s) are consumers as defined by 15 U.S.C. § 2301, defendant(s) are warrantors as defined by 15 U.S.C. § 2301 and the bed is a consumer product as defined by 15 U.S.C. § 2301.

---

[23] As explained by the Appellate Division:

Article 2 of the UCC applies to transactions in goods. N.J.S.A. 12A:2-102. "'Goods' mean all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action." N.J.S.A. 12A:2-105(1).

DiIorio v. Structural Stone & Brick, 845 A.2d 658, 368 N.J. Super. 134 (N.J. Super., 2004).

161. The provisions of 15 U.S.C. § 2301, et seq. apply to this case, because, pursuant to 15 U.S.C. § 2301-2303, defendant(s) are manufacturers and/or sellers and/or warrantors of a consumer product sold to plaintiff(s) with written and implied warranties and/or service contracts and plaintiff(s) are entitled to enforce the provisions of same.

162. Pursuant to 15 U.S.C. § 2308, as defendant(s) have extended written warranties and/or service contract to plaintiff(s), except for the modifications permitted in said statute, defendant(s) are unable to disclaim or modify the implied warranties issued in conjunction with the bed.

163. Plaintiff(s) suffered damages by defendant(s)' failure to comply with defendant(s)' obligations under the U.C.C. and/or 15 U.S.C. § 2301, et seq. and/or under the aforesaid express written warranties and/or implied warranties and/or service contracts and thus bring this action against defendant(s) for damages and pursuant to 15 U.S.C. § 2310, et seq., are entitled to recover attorney's fees and court costs. For, pursuant to 15 U.S.C. § 2310, et seq., a consumer who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state and may also seek an award of attorney's fees and costs associated with the dispute. 15 U.S.C. § 2310.

WHEREFORE, plaintiff(s) demand judgment against all defendant(s) named to this count individually and/or jointly and/or severally for: (1) Compensatory damages; (2)

38

The legal/equitable remedies provided for under the contract and/or common law and/or any state and/or federal statutes pled herein, including any fees permitted by any applicable statue, court rule or common law authority or consequential, incidental, nominal and expectation damages; (3) Lawful interest and court costs; and (4) Such other and further relief as the court shall deem equitable and just.

## JURY DEMAND PURSUANT TO R. 4:35-1

Pursuant to R. 4:35-1, relative to all issues pled in the instant action that are so triable, plaintiff(s) hereby demand a trial by six (6) jurors.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, **LEWIS G. ADLER, ESQ.** is designated as trial counsel in this matter.

## NOTICE PURSUANT TO R. 1:5-1(a) AND R. 4:17-4(c)

Take notice that, pursuant to R. 1:5-1(a) and R. 4:17-4(c), plaintiff(s) hereby demand that each party named in the complaint that serves or receives pleadings of any nature (including discovery requests) to or from any other party to the action, forward copies of same along with any documents provided in answer or response thereto to counsel for plaintiff(s) and take notice that this is a continuing demand.

## NOTICE PURSUANT TO R. 1:7-1(b)

PLEASE TAKE NOTICE that to the extent applicable to this case, Plaintiff(s) may, at the time of closing argument, suggest to the trier of fact with the respect to any element of damages, that unliquidated damages be calculated on a time-unit basis, without reference to a specific sum.

## CERTIFICATION PURSUANT TO R. 4:5-1(2) and (3)

Pursuant to R. 4:5-1(2) and (3), LEWIS G. ADLER hereby certifies that:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for plaintiff(s) in this case and am personally familiar with the facts recited herein as a result of my being said counsel and from handling this case for my clients.

3. Upon my initial review of this matter, the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding, that no other action or arbitration proceeding is currently contemplated and that I am unaware of any other parties who currently should be joined to this action.

4. Confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

5. The aforesaid information contained in this certification is true and correct and if such information is willfully false, I understand that I am subject to punishment.

DATED: January 6, 2015

**LEWIS G. ADLER, ESQUIRE**

LEWIS G. ADLER

40

## CERTIFICATION OF SERVICE PURSUANT TO N.J.S.A. 56:8-20

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for plaintiff(s) in this case and am personally familiar with the facts recited herein as a result of my being said counsel and from handling this case for my client(s).

3. As required by N.J.S.A. 56:8-20, I hereby certify that on the below referenced date I caused a copy of the complaint to be served upon the following offices via first class United States Mail, postage prepaid:

    **XX**    Office of the Attorney General Richard J. Hughes Justice Complex, P.O. Box 80, Trenton, NJ, 08625-0080.

I certify that the foregoing information in this certification is true and correct and if any of such information is willfully false, that I am subject to punishment.

DATED:  January 6, 2015

**LEWIS G. ADLER, ESQUIRE**

LEWIS G. ADLER

41

# COMPLAINT
# EXHIBIT 1



Select Comfort Corporation
9800 59th Avenue North
Minneapolis, MN 55442

# Customer Order

**Store:** 532 - Ocean County
**Date:** 04/25/2013
**Sleep Professional:** Allen S.
**Order Number:** 11532207879

**Customer Information:**
DAVID SPADE
9 GEYSER PL
BARNEGAT, NJ 08005-5589

**Ship To:**
DAVID SPADE
9 GEYSER PL
BARNEGAT, NJ 080055589

### Items on Order

| Qty | Model | Item Description | Shipping Method | Unit Price | Discount | Extended Price |
|-----|-------|------------------|-----------------|-----------|----------|----------------|
| 1 | KM45I10 | i10, King, Mattress w/out Base | Home Delivery | $ 5,049.99 | ($ 900.00) | $ 4,149.99 |
| 1 | DELFOTAL | Comfort Service Home Delivery/Set Up/Removal | | $ 169.99 | ($ 169.99) | $ 0.00 |
| 1 | KFA5031 | King FlexFit+ Adj. Base w/ Silhouette, 1 Remote | Home Delivery | $ 4,299.98 | $ 0.00 | $ 4,299.98 |
| 1 | 118105 | FlexFit+ Headboard Bracket,TXL/Kg/Spi Kg | Home Delivery | $ 29.99 | $ 0.00 | $ 29.99 |
| 1 | 421354 | Mattress Pad, Total Protection, King | Rec'd at Store | $ 219.99 | ($ 44.00) | $ 175.99 |
| 1 | 422619 | Extra Firm Support Pillow, Down Alternative, King | UPS | $ 119.99 | ($ 24.00) | $ 95.99 |
| 1 | 421272 | Printed Travel Pillow | Rec'd at Store | $ 12.99 | $ 0.00 | $ 12.99 |
| | | | | Sub Total: | | $ 8,764.93 |
| | | | | Sales Tax: | | $ 613.55 |
| | | | | Total | | $ 9,378.48 |

### Payment Information

| Payment Method | Payment Details | Authorization Code | Payment Amount |
|----------------|-----------------|--------------------|----------------|
| Master Card | | | $ 3,500.00 |
| 24 Months Equal Payment/No Interest | | | $ 5,878.48 |
| | | Total Payments | $ 9,378.48 |

## Estimated Sleep Number® Bed delivery will be within 2 weeks.
## Deliveries outside of the standard delivery area are estimated to be within 21 days.
### *Excludes factory outlet, demo, limited and special edition beds.*

*TRACKING YOUR ORDER:* Use the Order Number at the top of this page at www.sleepnumber.com/ordertracking. Please allow 24 hours for your order to be visible in our online order tracking system. Congratulations and thank you for your purchase.

*AGREEMENT:* By signing below, I acknowledge that I have read and understand the Terms and Conditions outlined below and agree that they apply to my purchase. I understand and agree that no one has the authority to supplement, alter or modify any of these Terms and Conditions of this sale except in writing signed by an authorized representative of Select Comfort® and any attempt to do so will be of no effect. I understand that Select Comfort® is not responsible for pricing, typographical or other errors in any offer and reserves the right to cancel any orders resulting from such errors. Unless payment in cash is tendered at the point of purchase, I agree to pay the above charges according to the terms and conditions of the agreement issued in connection with the credit or charge card used to purchase the items listed above.

Signature _David Spade_                              Date _____

**TERMS AND CONDITIONS OF SALE**

*30 Night In-Home Trial Policy:* Unless your purchase is otherwise excluded as specified herein, the 30 Night In-Home Trial period begins the day your new Sleep Number® bed arrives at the "ship to" address listed above. If, after sleeping on your new bed for a full 30 nights, you are not completely satisfied, contact us within 45 days of delivery to arrange for its return. **Exclusions:** The 30 Night In-Home Trial Policy does not apply to the purchase of Sleep Number® Limited Edition or Sleep Number® Special Edition mattresses, bases or sets or to the purchase of demo display, refurbished or Factory Outlet warehouse closeout mattresses, bases or sets as these sales are final. The 30 Night In-Home Trial policy does not apply to the purchase of Sleep Number® bedding collections or mattresses, bases or sets received in exchange under an original 30-Night In-Home Trial purchase.

*Limited or Special Edition or Closeout Bed Purchases:* No returns will be accepted on Sleep Number® Limited or Sleep Number® Special Edition mattress, base or set purchases. If, within 45 days of delivery, you are not satisfied, you are eligible for a onetime exchange to another Sleep Number® mattress, base or set. You must contact us to authorize this exchange. You will be responsible for any price difference as well as shipping costs.

*Closeout Bed Purchases:* No returns will be accepted on Sleep Number® closeout mattress, base or set purchases made prior to June 6, 2011 or Factory Outlet closeouts purchased at any time.

*Adjustable Bases:* The FlexFit™ or FlexFit™ Plus Adjustable Base is not covered under the Select Comfort® 30 Night In-Home Trial policy. As sales of FlexFit™ or FlexFit™ Plus Adjustable Bases are final, **No returns or exchanges will be authorized or accepted.**

*Upholstered Beds:* The Upholstered Bed Collection is not covered under the Select Comfort® 30 Night In-Home Trial policy. Because this is a made-to-order item, all sales are final and no returns or exchanges will be authorized or accepted.

*Sleep Number Bedding Collection Exchange-only Policy:* Within 30 days of receiving your Bedding Collection product, you may exchange a product for a different Bedding Collection purchase. Exchanges will only be allowed 1-time per item purchased. Bedding Collection products can not be returned for a refund. You must provide proof-of-purchase. All sales are final on clearance items.

*Financed Purchases:* Payment terms on purchases financed through Select Comfort® Consumer Credit Card issued by GE Capital Retail Bank or through HELPcard are governed by the terms of your agreement with the card's issuer. Available promotional financing payment plans vary over time and are subject to change without notice. If you have elected to pay for your purchase with an available financing plan, the type of plan you've selected is listed above. Complete details of the plan you selected are listed below, also available from your card issuer.

| Promotion Type | **EQUAL PAYMENT NO INTEREST** |
|---|---|
| Promotion Period | **36 MONTHS** |
| Promotional APR | **0.00%** |
| Purchase APR | **0.00%** |

Under this promotion, no interest will be assessed on your promotional purchase balance until paid in full. During the Promotional Period, equal monthly payments are required and will be equal to the initial promo purchase amount divided by the number of months in the Promotional Period. The equal monthly payment will be rounded up to the next highest whole dollar and may be higher than the minimum payment that would be required if this was a non-promotional purchase. If Promotion Type above states quot;Non-Promotional Purchasequot; or quot;Standard Purchasequot;, your purchase does not qualify for a promotion and regular account terms apply to your purchase.

*Warranty:* Nothing contained herein is intended to alter or modify the terms of any warranty that may or may not accompany your purchase. The terms of the warranty, if any, will be contained in the owner's manual that accompanies your purchase. You may obtain a specimen copy of the warranty that may apply to your purchase from your Sales Professional or from our website at http://www.selectcomfort.com. No one has the authority to supplement, alter or modify the terms of any warranty.

*Returns:* No unauthorized returns are allowed. If you are returning your mattress, base or set purchase under the 30 Night In-Home Trial policy you must contact our Customer Service Center (800-472-7185) to obtain a Return Merchandise Authorization (RMA) number _before_ returning the bed to us. Once your authorized return has been completely received by us in a good and sanitary condition, we will reimburse the full purchase price of the items being returned less shipping or Home Delivery Service & Setup fees. Refunds will be issued to the original method of payment within approximately 21 days. Unauthorized returns will be destroyed and no credit given. You are responsible for the risk of loss and for shipping fees for returning or exchanging any product. Home Delivery Return Services are available at an additional cost. **Gift-With-Purchase** **promotional items:** Any gift-with-purchase received with the purchase of selected mattresses and bed sets are promotional items. A mattress or bed set return under this promotion requires the accompanying return of the gift-with-purchase. If the gift-with-purchase is not returned, the retail value will be deducted from the mattress or bed set refund.

## FULL 2 YEAR WARRANTY

## 5 YEAR LIMITED WARRANTY

## 2½ YEAR LIMITED WARRANTY

L&P makes no other warranty whatever, express or implied, and all implied warranties of merchantability and fitness for a particular purpose are disclaimed from this agreement. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to every purchaser.

# COMPLAINT EXHIBIT 3

# LAW OFFICE OF PAUL DEPETRIS
### 703 STOKES RD., STE. 9, MEDFORD, NJ 08055
### TEL.: (609) 714-2020; EMAIL: PAUL@NEWJERSEYLEMON.COM

PAUL DEPETRIS
MEMBER, NJ AND PA BARS

WWW.NEWJERSEYAPPEAL.COM
WWW.NEWJERSEYLEMON.COM
WWW.NEWJERSEYSPECIALCIVIL.COM

October 24, 2014

**Via first class & certified mail, RRR**

Select Comfort Corporation
d/b/a Sleep Number
9800 59th Ave. N.
Minneapolis, MN 55442

**Via first class & certified mail, RRR**

Leggett & Platt
Adjustable Bed Customer Service Center
P.O. Box 668
Lexington, NC 27293

**Re: Notice Of Demand For Revocation Of Acceptance**

| Consumers | David and Katina Spade |
|---|---|
| Product: | New i10 King Sleep Number Bed Mattress & Accoutrements |
| Order #: | 11532207879 |
| Purchase Date: | Approx. 4-25-13 |
| Selling Dealer: | Store 532 – Ocean County |

Dear Sir/Miss:

## INTRODUCTION

Please be advised that I represent the above referenced consumer(s) relative to problems they experienced in connection with the above referenced product. Kindly direct all future correspondence or calls relative to this matter to my office. Except to have contact with the consumer(s) to make further repair attempts under the warranties you issued with the bed, please have no further contact with the consumer(s).

The purpose of this letter is to make a formal demand for revocation of acceptance. This demand herein must be accepted within the time frame and in the manner set forth below and is presented without prejudice to the consumer(s). As the contents of this letter are for settlement purposes only, nothing herein, including any exhibits hereto, should be construed as an admission of any kind. The demand referenced herein is a compromise that reflects the potential resolution of this matter before additional time

1

and expense is expended in this matter preparing and filing suit, conducting discovery and/or motion practice and preparing the file for mediation/arbitration/trial.

Excepting those facts which were gleaned from the documents provided by the consumers, all facts set forth below were provided by the consumers.

This letter provides you formal presuit notice of the consumer(s)' intent to revoke acceptance of the subject product pursuant to the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2-608 and the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301, et seq.

## ABBREVIATIONS

For brevity's sake, hereafter, I shall use the following abbreviations:

| Original Term | Abbreviation |
|---|---|
| David and Katina Spade | The consumers |
| The bed that is the subject of this dispute – a i10 King Sleep Number Bed Mattress & Accoutrements purchased new | The bed |
| Select Comfort Corporation and Leggett & Platt collectively | The merchant or you |
| The problems that the consumer(s)' experienced with the bed and/or when using the bed | The problems |
| The New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. | The UCC |
| The contract for the purchase of the bed | The contract |

## EXHIBITS TO LETTER

In support of this letter, via an exhibit list, I identified various exhibits that support the consumer(s)' position. Attached hereto please find copies of all of the aforesaid exhibits. All of those exhibits were provided to us by the consumer(s), with the exception of the enclosed summary of the bed's repair history that my office prepared. Please do not misconstrue any of the contents of the documents so enclosed or identified as adoptive admissions on my client's part. See N.J.R.E. 803(b)(2); Skibinski v. Smith, 206 N.J. Super. 349 (App. Div. 1985); Cocoran v. Sears, 312 N.J. Super. 117 (App. Div. 1998).

The aforesaid exhibits are as follows:

A. Customer Order for order # 11532207879.
B. 4 (four) pictures the consumers took of the bed on 4- 22-14 showing problems experienced with the bed.

## FACTUAL ALLEGATIONS

On April 25, 2013 the consumers purchased the bed. The bed's Flex Fit Plus feature allows customers to raise and lower the head and foot portions of the mattress with a

2

remote control (the remote control is the only way to activate it).   This feature (with a base sold with the bed), cost an additional $4,300.00 over the price of the bed without said feature and base.  On 5-29-14, the consumers took delivery of the bed, with workmen delivering and setting up the bed.

After taking delivery, the consumers experienced two distinctly different problems with the bed, as follows:  (1) operation of the bed's mattress – a shifting problem, for which Sleep Number made unsuccessful repair attempts to the bed twice; (2) the mechanics of the bed – which according to Sleep Number, is serviced by Leggett & Platt and which they repeatedly made unsuccessful repair attempts to repair.   When the bed malfunctions a cracking sound from the platform is audible.

Within a few weeks of taking delivery of the bed, upon using the bed's FlexFit Plus feature to raise the head and foot of the mattress, the consumers noticed that only one side of the mattress responded to the remote control.  Accordingly, the consumers lowered the bed to the flat position and tried to raise it again, whereupon it worked correctly.  Approximately two weeks thereafter, the consumers experienced the same problem.   Accordingly, at that time, the consumers changed the batteries in the bed's remote control and the bed thereafter seemed to work when the consumers tried it again. Several weeks later, the same problem occurred again. This time, after lowering the bed to the flat position and trying to raise it again, the bed did not perform correctly.   Accordingly, the consumers contacted Sleep Number to complain about the mattress shifting and that it was not responding to the remote correctly.  In response, Sleep Number sent a serviceman to inspect the mattress.  Sleep Number thereafter told the consumers that the bed's mechanics were a "Leggett & Platt" problem. The serviceman from Sleep Number drilled holes in the bed's base, which was supposed to prevent the mattress from shifting.  However, that repair attempt, as with all others performed to the bed, failed to remedy the bed's problems.

When the consumers contacted Leggett & Platt, in response, on 9-6-13, they sent out a serviceman, Gene Donat.   He claimed that the problem could have been due to the consumers' ceiling fan, TV remote and their wireless internet connection.  On 10-2-13, the serviceman from Leggett & Platt came to service the bed again.  He changed the FlexFit Plus from 2 motors - 1 operating on each side of the bed - to 1 motor, with a 'V' connection wire to control both sides of the bed simultaneously. This repair attempt was supposed to correct the problem but failed to do so. Accordingly, on 10-14-13, the aforesaid serviceman returned to the consumer's home to perform yet another repair attempt to the bed.  On this occasion, the aforesaid serviceman changed more parts on the bed, one of which may have been a motor. Nevertheless, the problem persisted intermittently.   Accordingly, on 3-26-14, the consumers contacted Sleep Number and reported the problems to 2 women, Lisa and

Theresa. In response to said complaint, Sleep Number sent a technician, to replace the mattress cover and a technician was dispatched from Leggett & Platt on two additional dates to replace more parts on the bed (which apparently also included its motor). In all, there were 3 different repair attempts made to the bed during April, 2014, as follows: 4-1-14, 4-7-14 and 4-15-14. On 4-15-14, a technician told the consumers that "everything was new" and proceeded to demonstrate the bed to the consumers, whereupon it again malfunctioned. The technician looked under the bed and told the consumers that the technician forgot to connect something on the bed.

The consumers were never given any service orders or receipts when the bed was serviced. However, one or more of the consumers signed an electronic pad when a serviceman or technician completed their repair attempts.

### NOTICE OF PROSPECTIVE LITIGATION HOLD

Since this matter may in future result in litigation if you do not comply with the demand in this letter, you are now under a legal duty to preserve all evidence, whether printed or electronic that might become relevant to this matter, including any information about repairs to the property or materials you installed or used at the property. Some of this information may be in your possession or control and you have a legal duty to preserve that information. The purpose of this letter is to explain to you what that obligation means. You are required to take the following steps immediately to protect and preserve any of that information that is in your possession or under your control until further notice. Specifically, you will need to do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under your control. This includes electronic information wherever it is stored – at your work station, on a laptop, or at home. It includes all forms of electronic communication – e.g., e-mail, word processing, calendars, voice messages, videos, photographs, information in your PDA. This electronic information must be preserved so that it can be retrieved at a later time. You can be assured that nothing will be produced for the other side without first being appropriately reviewed and private or privileged information removed. The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication. Your responsibility is for the information that is under your control.
2. Similarly, preserve any new electronic information that is generated after you receive this letter that is relevant to this dispute.
3. Preserve any hard copy under your control.

This is an important legal duty and if this dispute results in litigation, failure to follow these instructions may subject you to court imposed sanctions.

4

### DEMAND FOR PRESUIT RELIEF
**The consumer(s) hereby revoke acceptance of the bed. The consumer(s) are holding the bed to return same to you. Accordingly, by October 31, 2014, you are requested to make arrangements with my office to:**

1. accept the return of the bed.
2. provide the consumers a full refund of all payments made to date on the bed's lease/purchase agreement - $9,378.48.
3. pay the consumers' attorney's fees accrued to date relative to this matter of $2,500.00.

All checks must be made payable to the consumers and not made payable to me. If you refuse to act as aforesaid in the aforesaid time frame, the offer will be withdrawn and the consumers have thereafter authorized me to proceed with an action that may include but shall not necessarily be limited to the cause of action of violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301, et seq., breach of warranty and revocation of acceptance pursuant to the Uniform Commercial Code.

If you intend to act in accordance with the revocation demand requested herein and the bed is subject to a purchase lien and you therefore require lienholder information, I shall be happy to provide same upon your making a request for said information. Please consider this letter a demand for presuit satisfaction pursuant to the aforesaid statutes. If the aforesaid action proceeds, the consumers shall seek the remedy of revocation and actual/incidental/ consequential and any applicable statutory damages as well as attorney's fees and court costs. While the attorney's fees in this matter are currently small, as the case progresses through litigation, the attorney's fees and costs shall continue to accrue.

Regards,
*Paul DePetris*
Paul DePetris

cc:     client(s) (encl. omitted)
         Lewis G. Adler, Esq.

# COMPLAINT
# EXHIBIT 4

# EXHIBIT        B

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

David Spade and Katina Spade, individually and as a class representatives on behalf of other similarly situated,

        Plaintiffs,

vs.

Select Comfort Corporation d/b/a Sleep Number, Leggett & Platt, Incorporated and John Doe Individuals and Businesses 1–20,

        Defendants.

Civil File No. _____

## DECLARATION OF HEATHER M. SOMERS

---

I, Heather M. Somers, hereby depose and say:

1.    I am Vice President and Associate General Counsel at Select Comfort Corporation. I am a resident of Minnesota, and I have personal knowledge of the facts set forth in this Declaration. If called on as a witness, I could and would competently testify as to the matters set forth herein.

2.    I requested and reviewed information from Select Comfort's finance department relating to sales of furniture products and mattresses in New Jersey during the six years preceding filing of the complaint in this litigation.

3.    From 2009 through 2014, Select Comfort issued approximately 76,239 separate order numbers for furniture products purchased within the State of New Jersey. Of those, 50,038 were for mattresses. Each order number correlates to a separate sales contract.

1

4.     For the six years between 2009 and 2014, Select Comfort sold $109,001,348 worth of furniture products in the State of New Jersey.  Mattress sales accounted for $92,939,197 of that number.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 9, 2015

Heather M. Somers

3108106 v.1

# EXHIBIT     C

STEPHEN L. DREYFUSS, ESQ.
ROBERT B. ROSEN, ESQ.
**HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP**
One Gateway Center
Newark, New Jersey 07102-5386
(973) 621-9020

ANDREW S. HANSEN, ESQ. (MN #285894)
HEIDI A.O. FISHER, ESQ. (MN #320638)
**OPPENHEIMER WOLFF & DONNELLY LLP**
Campbell Mithun Tower, Suite 2000
222 South Ninth Street
Minneapolis, MN 55402-3338
Telephone:  (612) 607-7000
Facsimile:  (612) 607-7100
**Attorneys for Defendant Select Comfort Corp.**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David  Spade  and  Katina  Spade, individually  and  as  a  class representatives  on  behalf  of  other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Select  Comfort  Corporation  d/b/a Sleep  Number,  Leggett  &  Platt, Incorporated and John Doe Individuals and Businesses 1–20,<br><br>Defendants. | ECF CASE<br><br>Civil Action No. _____<br><br><br>**CONSENT TO REMOVAL** |

Defendant Leggett & Platt, Incorporated, through its undersigned counsel, without

waiver of, or prejudice to, any of its defenses, hereby consents to Select Comfort's

removal of this case, originally filed in the Superior Court of New Jersey, Law Division,

Civil Part, Ocean County, under docket No. L-151-15, to the United States District Court

for the District New Jersey.

Dated: _3-11-15_                     **NORRIS MCLAUGHLIN & MARCUS, P.A.**

                              By: _____
                                      Steven A. Karg

                              721 Route 202-206
                              Suite 200
                              Bridgewater, New Jersey 08807-5933
                              Telephone:    (908) 252-4276
                              Facsimile:    (908) 722-0755
                              E-Mail:       _sakarg@nmmlaw.com_

                              **Attorneys for Defendant, Leggett & Platt,
                              Incorporated**

## CERTIFICATION OF SERVICE

Stephen L. Dreyfuss, pursuant to 28 U.S.C. § 1746, certifies as follows:

On March 11, 2015, a copy of this Notice of Removal was served by FedEx, for next day delivery, upon the following counsel:

> LEWIS G. ADLER, ESQ.
> 26 Newton Avenue
> Woodbury, New Jersey 08096
>
> PAUL DePETRIS, ESQ.
> 703 Stokes Road, Suite 9
> Medford, New Jersey  08055
>
> Attorneys for Plaintiffs
>
> STEVEN A. KARG, ESQ.
> NORRIS, McLAUGHLIN & MARCUS, P.A.
> 721 Route 202-206, Suite 200
> Bridgewater, New Jersey  08807-5933
>
> Attorneys for Defendant Leggett & Platt, Incorporated

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 11, 2015

s/ Stephen L. Dreyfuss
STEPHEN L. DREYFUSS

15040