UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| DAVID SPADE AND KATINA SPADE, H/W, INDIVIDUALLY AND AS A CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED, Plaintiffs,[1] vs. SELECT COMFORT CORPORATION D/B/A SLEEP NUMBER, Defendants. | CIVIL ACTION NO. 3:15-CV-01826-PGS-DEA |

## FIRST AMENDED COMPLAINT

DAVID SPADE AND KATINA SPADE, H/W, INDIVIDUALLY AND AS CLASS

REPRESENTATIVEs ON BEHALF OF OTHERS SIMILARLY SITUATED hereby

states by way of complaint:

### ABBREVIATIONS USED IN THIS DOCUMENT

1. For brevity's sake, hereafter plaintiffs shall use the

   following abbreviated terms:

| Complete Term | Abbreviation |
|---|---|
| Plaintiffs, David Spade And Katina Spade, h/w Collectively | Plaintiffs |
| David Spade Individually | David |
| Katina Spade Individually | Katina |
| Defendants Select Comfort Corporation d/b/a Sleep Number | Defendants |
| Leggett & Platt, Incorporated individually | L&P |
| SCC's store #532 located in Ocean County, New Jersey | The store |

---

[1] For simplicity's sake all references to the parties named to this case shall use plural rather than singular designation, regardless of their actual number.

| | |
|---|---|
| The bed that is the subject of this dispute – an i10 King Sleep Number Bed, Mattress & Accoutrements purchased new | The bed |
| Plaintiffs' Complaint Filed In This Case | The Complaint |
| The Instant Civil Action | This Case Or The Case |
| The Members Of The Putative Class Identified Below In The Class Action Certification Allegations | The class members or the class |
| The Class Action Fairness Act, 28 U.S.C. § 1332 | CAFA |
| The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 To -18 | TCCWNA |
| New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. | The UCC |
| Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 U.S.C. § 2301, et seq. | MMWA |
| The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, Et Seq. | CFA |
| N.J.S.A. 56:8-2 | Section 2 |
| New Jersey Division Of Consumer Affairs | DCA |
| New Jersey Household Furniture And Furnishings Regulations, N.J.A.C. 13:45A-5.1 to -5.4 | HFR |
| 9 Geyser Place, Barnegat, Ocean County, New Jersey | The property or the house |
| Sleep Number Customer Order Form dated 4-25-13 | The contract |
| Sleep Number Adjustable Base 2-5-25 Warranty. | The warranty |
| Letter from Paul DePetris to defendants dated 10-24-14 – i.e. the revocation of acceptance letter pursuant to N.J.S.A. 12A:2-608 | The revocation |
| The sale of the bed to plaintiffs via the store occurring on or about 4-25-13 | The sale |

**EXHIBITS REFERENCED IN COMPLAINT**

2. Plaintiffs repeat all of the allegations contained in the

previous paragraphs as if fully set forth herein.

3. Hereafter, plaintiffs shall rely upon and refer to the following exhibits attached to the complaint:[2]

    1) Sleep Number Customer Order Form dated 4-25-13.

    2) Sleep Number Adjustable Base 2-5-25 Warranty.

    3) Letter from Paul DePetris to defendants dated 10-24-14.

    4) FlexFit+ Content Sheet.

**PARTIES**

4. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

5. Plaintiffs is/are husband and wife respectively and individual persons residing at 9 Geyser Place, Barnegat, Ocean County, New Jersey.

6. Defendants SCC d/b/a Sleep Number® (which is SCC's registered trademark and/or trade name) is a manufacturer, designer, marketer, assembler, distributor and/or retailer that manufactures and/or designs and/or assembles and/or distributes and/or sells at retail and/or wholesale Sleep Number® beds, bed foundations and bedding accessories with offices located at 9800 59th Avenue North, Plymouth,

---

[2]Where necessary to comply with R. 1:38-7, et seq. and/or R. 4:5-1, et seq., exhibits may be redacted to omit personal confidential identifying information.  Where indicated, exhibits may be but portions of the documents identified.

Minnesota 55442.

7. Unless otherwise noted below, all allegations set forth
below are directed against all defendants named herein.

### FACTUAL ALLEGATIONS

8. Plaintiffs repeat all of the allegations contained in the
previous paragraphs as if fully set forth herein.

### The Sale

9. SCC is a business founded more than 20 years ago which
designs, manufactures, markets and supports a line of
adjustable-firmness mattresses featuring air-chamber
technology, branded the Sleep Number® Bed, As Well As Bases
And Bedding Accessories. Sleep Number® products are sold
through its approximately 400 company-owned stores located
across the United States; select bedding retailers; direct
marketing operations; and online at www.sleepnumber.com.

10. The store is one of SCC's New Jersey retail stores, which
is located in Ocean County, New Jersey.  See exhibit 1.

11. At all times relevant hereto, SCC operated the store.

12. L&P is a manufacturer, designer, marketer, assembler,
distributor and/or retailer that manufactures and/or
designs and/or assembles and/or distributes and/or sells at
retail and/or wholesale and/or conceives and/or produces a
diverse array of products that can be found in most homes,
offices, and vehicles with offices located at P.O. Box 757,

1 Leggett Road, Carthage, Missouri 64836.

13. Defendants manufactured and/or designed and/or assembled and/or distributed and/or offered for sale and/or sold at retail and/or wholesale and/or conceived and/or produced the bed and/or offered/provided warranties/warranty service associated therewith.

14. On or about 4-25-13, plaintiffs purchased the bed from defendants and/or defendants' agents or representatives via the store.  See exhibit 1.

15. Plaintiffs paid SCC approximately $9,378.48 for the bed's purchase.  See exhibit 1.

16. In connection with the sale, defendants offered and/or provided and/or issued the contract and the warranty to plaintiffs.  See exhibits 1 & 2.

**The Bed's Express Written Warranty**

17. In connection with the sale, defendants or defendants' agents or authorized representatives issued plaintiffs with the warranty – consisting of a written warranty covering the bed and its components.  See exhibit 2.

18. The warranty refers to Sleep Number® – SCC's trade name and/or registered name.  See exhibit 2.

19. The warranty provides the following contact information: "CONTACT INFORMATION:  Sleep Number Customer Service Department, 9800 59th Avenue North, Minneapolis, MN 55442,

800-728-9298."   See exhibit 2.

### The Unsuccessful Repair Attempts To The Bed

20. The bed's FlexFit Plus feature allows customers to raise
    and lower the head and foot portions of the mattress with a
    remote control (the remote control is the only way to
    activate it).   This feature (with a base sold with the
    bed), cost plaintiffs an additional $4,300.00 over the
    price of the bed without said feature and base.

21. On or about 5-29-14, plaintiffs took delivery of the bed
    at the property, with defendants' workmen delivering and
    setting up the bed there.

22. After taking delivery, plaintiffs experienced two
    distinctly different problems with the bed, as follows:
    (1) operation of the bed's mattress – a shifting problem,
    for which SCC made unsuccessful repair attempts to the bed
    twice; (2) the mechanics of the bed – which according to
    SCC, is serviced by L&P and which they repeatedly made
    unsuccessful repair attempts to repair. When the bed
    malfunctioned, a cracking sound from the platform was/is
    audible.

23. Within a few weeks of taking delivery of the bed, upon
    using the bed's FlexFit Plus feature to raise the head and
    foot of the mattress, plaintiffs noticed that only one side
    of the mattress responded to the remote control.

Accordingly, plaintiffs lowered the bed to the flat position and tried to raise it again, whereupon it worked correctly.

24. Approximately two weeks thereafter, plaintiffs experienced the same problem.  Accordingly, at that time, plaintiffs changed the batteries in the bed's remote control and the bed thereafter seemed to work when plaintiffs tried it again.

25. Several weeks later, the same problem occurred again. This time, after lowering the bed to the flat position and trying to raise it again, the bed did not perform correctly.  Accordingly, plaintiffs contacted SCC to complain about the mattress shifting and that it was not responding to the remote correctly.

26. In response, SCC sent a serviceman to inspect the mattress.  SCC thereafter told plaintiffs that the bed's mechanics were an "L&P problem".

27. A serviceman from SCC drilled holes in the bed's base, which was supposed to prevent the mattress from shifting. However, that repair attempt, as with all others performed to the bed, failed to remedy the bed's problems.

28. When plaintiffs contacted L&P, in response, on or about 9-6-13, L&P sent out a serviceman, Gene Donat, who incorrectly claimed that the problem could have been due to

plaintiffs' ceiling fan, TV remote and their wireless internet connection.

29. On 10-2-13, the serviceman from L&P came to service the bed again.  He changed the FlexFit Plus from 2 motors - 1 operating on each side of the bed - to 1 motor, with a 'V' connection wire to control both sides of the bed simultaneously. This repair attempt was supposed to correct the problem but failed to do so.

30. Accordingly, on 10-14-13, the aforesaid serviceman returned to the consumer's home to perform yet another repair attempt to the bed.  On this occasion, the aforesaid serviceman changed more parts on the bed, one of which may have been a motor.

31. Nevertheless, the problem persisted intermittently. Accordingly, on 3-26-14, plaintiffs contacted SCC and reported the problems to 2 women employed therewith or working therefor - Lisa and Theresa.

32. In response to said complaint, SCC sent a technician, to replace the mattress cover and a technician was dispatched from L&P on two additional dates to replace more parts on the bed (which apparently also included its motor).

33. In all, there were 3 different repair attempts made to the bed during April, 2014, as follows:  4-1-14, 4-7-14 and 4-15-14.

34. On 4-15-14, a technician told plaintiffs that "everything
    was new" and proceeded to demonstrate the bed to
    plaintiffs, whereupon it again malfunctioned.  The
    technician looked under the bed and told plaintiffs that
    the technician forgot to connect something on the bed.

35. Plaintiffs were never given any service orders or receipts
    when the bed was serviced.  However, one or more of
    plaintiffs signed an electronic pad when a serviceman or
    technician completed their repair attempts.

**Plaintiffs' Revocation Of Acceptance Of The Bed**

36. Plaintiffs retained counsel relative to this dispute and
    paid that counsel $2,500 out of pocket to seek relief
    against defendants.

37. Via a letter prepared by plaintiffs' counsel and
    addressed to defendants dated 10-24-14, plaintiffs revoked
    acceptance of the bed pursuant to N.J.S.A. 12A:2-608 and
    requested defendants to make arrangements with plaintiffs'
    counsel to:  (1) accept the return of the bed; (2) provide
    plaintiffs a full refund of all payments made to date on
    the bed's lease/purchase agreement - $9,378.48; and (3)
    pursuant to the MMWA,[3] pay plaintiffs' attorney's fees
    accrued to date relative to this matter of $2,500.00.  See
    exhibit 3.

38. However, no such refund was provided before plaintiffs
    filed the original suit in this case in the Superior Court
    of New Jersey, Law Division, Civil Part, Ocean County and
    to date, defendants failed to refund plaintiffs' out of
    pocket attorneys' fees.

### The CFA's Application To This Dispute Generally

39. Under the CFA, "(d) The term "person" as used in this act
    shall include any natural person or his legal
    representative, partnership, corporation, company, trust,
    business entity or association, and any agent, employee,
    salesman, partner, officer, director, member, stockholder,
    associate, trustee or cestuis que trustent thereof;"
    N.J.S.A. 56:8-1(d).

40. Under the CFA, "[t]he term "advertisement" shall include
    the attempt directly or indirectly by publication,
    dissemination, solicitation, indorsement or circulation or
    in any other way to induce directly or indirectly any person
    to enter or not enter into any obligation or acquire any
    title or interest in any merchandise or to increase the
    consumption thereof or to make any loan;…."  N.J.S.A. 56:8-
    1(a).

41. Under the CFA, "[t]he term "merchandise" shall include any
    objects, wares, goods, commodities, services or anything

---

[3]See 15 U.S.C. § 2310.

offered, directly or indirectly to the public for sale;…."
N.J.S.A. 56:8-1(c).

42. The term "sale" shall include any sale, rental or
distribution, offer for sale, rental or distribution or
attempt directly or indirectly to sell, rent or distribute.
N.J.S.A. 56:8-1(e).

43. Further, N.J.S.A. 56:8-2 states, in pertinent part:  "The
act, use or employment by any person of any unconscionable
commercial practice, deception, fraud, false pretense, false
promise, misrepresentation, or the knowing, concealment,
suppression, or omission of any material fact with intent
that others rely upon such concealment, suppression or
omission, in connection with the sale or advertisement of
any merchandise or real estate, or with the subsequent
performance of such person as previously described, whether
or not any person has in fact been misled, deceived or
damaged thereby, is declared to be an unlawful practice…."
N.J.S.A. 56:8-2.

44. As the sale involved a contract issued by defendants
relative to the sale of goods or services at retail, the
beds are merchandise covered by the CFA.  N.J.S.A. 56:8-2.

45. Further, both plaintiffs and defendants meet the
definition of "person" as set forth in N.J.S.A. 56:8-1(d).

46. The CFA is a statute that is to be applied broadly in light of the statute's remedial purpose. *Lemelledo v. Beneficial Management Corp. of Am.*, 150 N.J. 255, 264 (1997); *Blatterfein v. Larken Associates*, 323 N.J. Super. 167, 178 (App. Div. 1999).

47. Further, the CFA is designed to protect the public even when a merchant acts in good faith.[4]

**The Household Furniture**

**And Furnishings Regulations Generally**

48. Certain subsections of the CFA and regulations adopted by the DCA create per se violations, making merchants strictly liable for noncompliance.[5] For example, the CFA empowers the attorney general to "promulgate such rules and regulations" necessary to accomplish the CFA's objectives.[6] The HFR is one such set of regulations. Unless the CFA subsection or regulation provides otherwise, intent to violate the CFA is not a prerequisite to liability for such per se violations.[7] The parties subject to the CFA subsections and regulations are assumed

---

[4] *Cox v. Sears*, 138 N.J. 2, 16 (1994).
[5] . *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977).
[6] . N.J.S.A. 56:8-4; *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 70 (1985).
[7] . Artistic Lawn & Landscape Co., Inc. v. Smith, 381 N.J. Super. 75, 80 (Law Div. 2005).

to be familiar with them.[8] A merchant's subjective good

faith does not excuse technical noncompliance with CFA

statutory subsections and administrative regulations.[9]

49. The DCA adopted the HFR.  See N.J.A.C. 13:45A-5.1, et seq.

50. The HFR have the force of law.[10]

51. The HFR state, in pertinent part: "For purposes of this

rule, "household furniture" includes, but is not limited

to, furniture, major electrical appliances, and such items

as carpets and draperies."   See N.J.A.C. 13:45A-5.1.

52. The Farlex® online free dictionary defines the term

"furniture" as follows: "1. The movable articles in a room

or an establishment that make it fit for living or working.

2. Archaic Necessary equipment, as for a saddle horse or

sailing ship."  http://www.thefreedictionary.com/furniture

(citing American Heritage® Dictionary of the English

Language, Fifth Edition. (2011).

53. The HFR apply to any person selling household furniture:

(1) in or from New Jersey; or (2) into New Jersey from a

location outside the State of New Jersey.  N.J.A.C. 13:45A-

5.3.

---

[8]. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18-19 (1994).
[9]. *Truex v. Ocean Dodge, Inc.*, 219 N.J. Super. 44, 49 (App. Div. 1987).
[10] *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994).

54. The HFR state, in pertinent part: "N.J.A.C 13:45A-5.4
    VIOLATIONS; SANCTIONS[.] Without limiting the prosecution
    of any other practices which may be unlawful under the
    Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., any violation
    of the provisions of this subchapter shall be subject to
    the sanctions contained in said Consumer Fraud Act."
    N.J.A.C. 13:45A-5.4.

55. The HFR state, in pertinent part: "N.J.A.C. 13:45A-5.3
    Contract form; delayed delivery[.] (a) The contract forms
    or sales documents shall conspicuously disclose the
    seller's obligations in the case of delayed delivery in
    compliance with N.J.A.C. 13:45A-5.1 and shall contain, on
    the first page of the contract form or sales document, the
    following notice in ten-point bold face type: If the
    merchandise ordered by you is not delivered by the promised
    delivery date, (insert name of seller) must offer you the
    choice of (1) canceling your order with a prompt, full
    refund of any payments you have made, or (2) accepting
    delivery at a specific later date. (b) The provisions of
    this subchapter shall apply to any person who sells
    household furniture in or from the State of New Jersey or
    to any person located outside of the State of New Jersey
    who sells household furniture into this State. (c) It
    shall be unlawful for any person to use any contract or

sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable."

56. The language required by N.J.A.C. 13:45A-5.3 conspicuously disclosing the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1 refers to the following language of that section of the HFR: "Section 13:45A-5.1 Delivery practices; generally (a) Any person who is engaged in the sale of household furniture for which contracts of sale or sale orders are used for merchandise ordered for future delivery shall: 1. Deliver all of the ordered merchandise by or on the promised delivery date; or 2. Provide written notice to the consumer of the impossibility of meeting the promised delivery date. The notice shall offer the consumer the option to cancel said order with a prompt, full refund of any payments already made or to accept delivery at a specified later time. Said written notice shall be provided prior to the delivery date. (b) In the event a seller fails to deliver all of the ordered merchandise on the promised delivery date and makes only a partial delivery, the seller shall

comply with the notice requirement of (a) above. Said notice shall offer the consumer the option of cancelling the order with a prompt, full refund of any payments already made or accepting delivery of the balance of the ordered merchandise at a specified later date. (c) Failure to comply with (a) above shall constitute a deceptive practice under the Consumer Fraud Act. (d) For purposes of this rule, "household furniture" includes, but is not limited to, furniture, major electrical appliances, and such items as carpets and draperies. (e) For the purposes of this section, delivery of furniture or furnishings that are damaged or that are not the exact size, style, color or condition indicated on the sales contract, shall not constitute delivery as required by (a)1 above. Upon receipt of such non-conforming merchandise, the consumer shall have the option of either accepting the furniture or of exercising any of the options set forth in (a)2 above.

57. The HFR state, in pertinent part: "13:45A-5.2 CONTRACT FORMS; DATE OF ORDER a) The contract forms or sales documents shall show the date of the order and shall contain the following sentence in ten-point bold face type: The merchandise you have ordered is promised for delivery to you on or before (insert date or length of time agreed upon). b) The blank for the delivery date referred to in

(a) above shall be filled in by the seller at the time the contract of sale is entered into by the parties or when the sales documents are issued, either as a specific day of a specific month or as a length of time agreed upon by the buyer and seller (for example, "six weeks from date of order"). The date for delivery shall not be pre-printed in the contract prior to the time the contract of sale is entered into by the parties or when the sales documents are issued."

58. Further, without limiting the prosecution of any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., each of the aforesaid violations of the HFR shall be subject to the sanctions contained in said Consumer Fraud Act.  N.J.A.C. 13:45A-5.4.

## The Contract's Language That Misstates Consumer Rights And Seller Responsibilities

59. The contract lacks the following mandatory notice in ten-point bold face type as required by N.J.A.C. 13:45A-5.3: "If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date."

60. The contract lacks the language required by N.J.A.C. 13:45A-5.3 conspicuously disclosing the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1.  See exhibit 1.

61. Page 2 of the contract contains language that conflicts with N.J.A.C. 13:45A-5.3(c)(i.e., "[i]t shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable.") as follows:

- 30 Night In-Home Trial Policy:…Exclusions: The 30 Night In-Home Trial Policy does not apply to the purchase of Sleep Number® Limited Edition or Sleep Number® Special Edition mattresses, bases or sets or to the purchase of demo, display, refurbished or Factory Outlet warehouse closeout mattresses, bases or sets as these sales are final."

- Limited or Special Edition or Closeout Bed Purchases: No returns will be accepted on Sleep Number® Limited or Sleep Number® Special Edition mattress, base or set purchases. If, within 45 days of delivery, you are not

satisfied, you are eligible for a onetime exchange to another Sleep Number® mattress, base or set You must contact us to authorize this exchange. You will be responsible for any price difference as well as shipping costs.

- Closeout Bed Purchases: No returns will be accepted on Sleep Number® closeout mattress, base or set purchases made prior to June 6, 2011 or Factory Outlet closeouts purchased at any time.

- Adjustable Bases: The FlexFif'" or FlexFitTM Plus Adjustable Base is not covered under the Select Comfort® 30 Night In-Home Trial policy. All sales of FlexFif'" or FlexFit Plus Adjustable Bases are final. No returns or exchanges will be authorized or accepted.

- Upholstered Beds: The Upholstered Bed Collection is not covered under the Select Comfort® 30 Night In-Home Trial policy. Because this is a made-to-order item, all sales are final and no returns or exchanges will be authorized or accepted.

- Sleep Number Bedding Collection Exchange-only Policy: Within 30 days of receiving your Bedding Collection product, you may exchange a product for a different Bedding Collection purchase. Exchanges will only be allowed 1-time per item purchased. Bedding Collection

products can not be returned for a refund. You must provide proof-of-purchase. All sales are final on clearance items.

- Returns: No unauthorized returns are allowed. If you are returning your mattress, base or set purchase under the 30 Night In-Home Trial policy, you must contact our Customer Service Center (800-472-7185) to obtain a Return Merchandise Authorization (RMA) number before returning the bed to us. Once your authorized return has been completely received by us in a good and sanitary condition, we will reimburse the full purchase price of the items being returned less shipping or Home Delivery Service & Setup fees. Refunds will be issued to the original method of payment within approximately 21 days. Unauthorized returns will be destroyed and no credit given. You are responsible for the risk of loss and for shipping fees for returning or exchanging any product Home Delivery Return Services are available at an additional cost. Gift-With-Purchase promotional items: Any gift-with-purchase received with the purchase of selected mattresses and bed sets are promotional items. A mattress or bed set return under this promotion requires the accompanying return of the gift-with-purchase. If the gift-with-purchase is not

returned, the retail value will be deducted from the

mattress or bed set refund.

See exhibit 1, p. 2.

62. By including the aforesaid language in the contract which

contradicts plaintiffs' rights under the HFR, the contract

contains terms which violate or are contrary to the rights

and responsibilities provided for by the HFR and therefore,

the contract is null and void and unenforceable.  N.J.A.C.

13:45A-5.3.

63. In addition, since the contract does not distinguish as to

whether the bed consists in whole or part of demo, display,

refurbished or Factory Outlet warehouse closeout mattresses,

bases or sets or is a Limited or Special Edition or Closeout

Bed or Gift-With-Purchase promotional item or a made-to-

order item, plaintiffs' rights are left unexplained/unclear

by the contract's language.

64. However, the contract does indicate that the bed includes

an "Adj. base" and the consumers received from SCC a

FlexFit" content sheet and therefore the adjustable base

exclusionary language cited above applies to the contract

(i.e., "Adjustable Bases: The FlexFit" or FlexFitTM Plus

Adjustable Base is not covered under the Select Comfort® 30

Night In-Home Trial policy. All sales of FlexFit" or FlexFit

Plus Adjustable Bases are final. No returns or exchanges will be authorized or accepted.").

65. That language is not permitted by the HFR, which expressly states that "[i]t shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule." N.J.A.C. 13:45A-5.3(c).

66. Accordingly, by including the aforesaid language in the contract pertaining to adjustable base beds of which the bed is one, such language further contradicts plaintiffs' rights under the HFR, the contract contains terms which violate or are contrary to the rights and responsibilities provided for by the HFR and therefore, the contract is null and void and unenforceable. N.J.A.C. 13:45A-5.3. In violation of N.J.A.C. 13:45A-5.2, the contract does not include the following mandatory language required by the HFR in ten-point bold face type: "The merchandise you have ordered is promised for delivery to you on or before (insert date or length of time agreed upon)." See exhibit 1.

67. Instead, page 1 of the contract has the following language preprinted in the contract: "Estimated Sleep Number® Bed

delivery will be within 2 weeks.  Deliveries outside of the standard delivery area are estimated to be within 21 days. *Excludes factory outlet, demo, limited and special edition beds."   See exhibit 1.

68. Aside from violating the HFR by containing a preprinted delivery period (see N.J.A.C. 13:45A-5.1), the contract's aforesaid language does not specify with particularity the period for the date of the bed's delivery but rather, merely provides an estimated delivery period and disclaims that estimated time frame for certain types of merchandise (i.e., factory outlet, demo, limited and special edition beds) without specifying what category of merchandise the bed actually is (i.e., factory outlet, demo, limited and special edition beds).  See exhibit 1.  N.J.A.C. 13:45A-5.1.

69. Accordingly, by including in the contract the language of the contract pertaining to the time for delivery of the bed, defendants used a contract or sales agreement that contains terms which violate or are contrary to the rights and responsibilities provided for by the HFR and therefore, the contract is null and void and unenforceable.  N.J.A.C. 13:45A-5.2; N.J.A.C. 13:45A-5.3.

**The Contract's Language Contract Containing Fraudulent**

**Misstatement Of Plaintiffs' Rights And**

**Defendants' Obligations Under New Jersey Law**

70. Both plaintiffs and defendants meet the definition of "person" as set forth in N.J.S.A. 56:8-1(d).

71. The bed was a major electrical appliance sold by seller defendants to plaintiffs who are consumers.

72. The bed is tangible property that plaintiffs purchased primarily for personal, family or household purposes.

73. As to the sale, defendants "engaged in the sale of household furniture for which contracts of sale or sale orders are used for merchandise ordered for future delivery…."

74. Further, the bed is a movable article for placement in plaintiffs' residence to make it fit for living.

75. The contract has language on its front and reverse sides. Exhibit 1.

76. By misstating consumer rights and seller responsibilities as to the whether the sale is final and whether return/cancellation/exchange fees apply, the contract subverts one of the crucial purposes of the HFR – to provide certainty to consumers prior to the bed's delivery date as to the consumer's ability to cancel the sale and

secure a prompt, full refund of any payments already made. Exhibits 1-2.

77. Language such as that used in the contract as to the sale's finality, returns and/or exchanges and the amount of refunds due (after considering deductions of additional delivery and/or restocking charges/fees) is confusing to consumers and therefore, is the very type of harm that the HFR and CFA seek to avoid. Exhibits 1-2.

78. New Jersey courts refused to enforce exculpatory clauses in consumer contracts and warranties that would insulate merchants in whole or part from CFA claims, TCCWNA claims or similar types of claims, including relief mandated under those statutes.[11]

---

[11] *Johnson v. Wynn's Extended Care, Inc.*, 635 Fed. Appx. 59 (3d Cir. 2015)(Service contract provision waiving consumer's right to recover attorney's fees and requiring the spitting of costs); *Jasphy v. Osinsky*, 364 N.J. Super. 13 (App. Div. 2003)(Furrier's efforts to invoke clause limiting damages to $1.00 per garment against claim to recover value of furs destroyed in fire.); *Mango v. Pierce-Coombs*, 370 N.J. Super. 239 (App. Div. 2004); *Lucier v. Williams*, 366 N.J. Super. 485 (App. Div. 2004)(Septic system inspection contract limiting effect of certification to the day of real estate inspection.); Home inspection agreement limiting damages to $500, or 50% of the fees claimant actually paid to the inspector, whichever sum was smaller.).

**Defendants' Liability For Issuing A Contract Containing**

**Fraudulent Misstatement Of Plaintiffs' rights and**

**defendants' obligations**

**Under New Jersey Law**

79. Businesses can face liability for issuing consumers contracts that affirmatively misstate obligations to consumers under New Jersey law.[12]

80. In this case, plaintiffs point to the HFR as proof that: (1) defendants had knowledge of the HFR's requirements relative to the language of the contract; (2) defendants were required to follow the HFR's requirements by assuring that the contract correctly stated plaintiffs' rights and defendants' obligations to plaintiffs under the HFR; (3) that the contract contains fraudulent language – language which affirmatively misstates plaintiffs' rights and defendants' obligations to plaintiffs under the HFR; and (4) that defendants committed one or more per se CFA violations via HFR violations.

81. Therefore, defendants' affirmative misstatements made in the contract support the causes of action pled in this complaint.

82. Also, the contract's illegal exculpatory clause discussed in detail above make the contract unconscionable and in

violation of New Jersey law such as the CFA and caselaw limiting the use of exculpatory clauses in consumer contracts such as the contract.

83. Plaintiffs seek a refund of the bed's purchase price.

84. As stated above, the contract includes a provision and/or provisions that affirmatively misstate the plaintiffs' rights and defendants' obligations under the HFR.

85. On its face, language such as that used in the contract is confusing to consumers and clearly is contrary to the mandates of the HFR and the CFA.

86. Since the contract contains affirmative misrepresentations about plaintiffs' rights under New Jersey law, the contract is fraudulent, the contract is null and void and unenforceable and plaintiffs are entitled to a declaratory judgment that the contract is such and plaintiffs.

87. Plaintiffs are also entitled to a full refund of the bed's purchase price and an injunction to stop defendants from issuing New Jersey citizens illegal warranties with the same language as the contract.

88. Plaintiffs are also entitled to treble damages for defendants' aforesaid misconduct.

---

[12] *David Spade v. Select Comfort Corp.*, 232 N.J. 504 (2018).

**Defendants' Section 2 CFA and Per Se CFA Violations**

89. By issuing an illegal contract and charging plaintiffs for the bed with the illegal contract that violates the HFR, defendants' entire course of conduct in this dispute provides evidence of unlawful practices committed against plaintiffs. The following conduct on defendants' part support section 2 CFA violations:

- Selling an appliance while making the aforesaid written affirmative misrepresentations in the contract.  Defendants thereby made affirmative misrepresentations about the contract that were: (1) material to the transaction; (2) of fact and found to be false; and (3) made to induce plaintiffs to purchase the vehicle.

- Committing an unconscionable commercial practice by selling the bed as previously described with the illegal contract containing language that violates New Jersey law – an activity in the public marketplace, which is basically unfair or unjust, which materially departs from standards of good faith, honesty in fact and fair dealing.  Unconscionable conduct speaks of factual dishonesty and unfair dealing.

- Committing a deception by selling the bed with the illegal contract as previously described containing

language that violates New Jersey law - conduct or an
advertisement, that is misleading to an average
consumer to the extent that it is capable of, and
likely to, mislead an average consumer.  It is the
capacity to mislead that is important. Therefore, it
is irrelevant whether: (a) at a later time, the
conduct or advertisement was capable of explanation
"to a more knowledgeable and inquisitive consumer; or
(b) the conduct or advertisement actually misled
claimants; or (c) the merchant acted in good faith.

- Committing a fraud by selling the bed with the illegal
  contract as previously described containing language
  that violates New Jersey law - a perversion of the
  truth or misstatement or falsehood communicated to
  plaintiffs and creating the possibility that
  plaintiffs will be cheated.

- Committing a false pretense by selling the illegal
  contract as previously described containing language
  that violates New Jersey law - an untruth, knowingly
  expressed by a wrongdoer.

- Committing a false promise by selling the bed with the
  illegal contract as previously described containing
  language that violates New Jersey law - an untrue
  commitment or pledge, communicated to another person,

to create the possibility that that other person will be misled.

90. These examples provide ample evidence that defendants engaged in one or more of the following affirmative acts: an affirmative misstatement, unconscionable commercial practice, deception, fraud, false pretense or false promise.

91. As to all of the above misconduct, the CFA permits a finding that it was violated without any showing of knowledge of falsity of the misrepresentation, an intent to deceive or even negligence on the adjuster's part.[13]

92. The previously described misconduct amounted to substantial aggravating circumstances over and above a mere breach of contract and/or breach of contract and therefore, said misconduct was sufficient to trigger one or more CFA violations.

93. Plaintiffs have proof of an ascertainable loss of money or property under the CFA capable of being calculated within a reasonable degree of certainty and proximately caused by defendants' previously described fraudulent conduct, as evidenced by the following: plaintiffs tendered the purchase price of the bed and received a contract

containing language that violates New Jersey law as
aforesaid.   Exhibit 2.

94. Moreover, due to defendant's misconduct, plaintiffs failed
to receive the benefit of plaintiff's bargain under the
contract.

95. Moreover, plaintiffs are out of pocket $2,500 in
attorney's fees that plaintiffs paid to plaintiffs'
counsel.

96. Where, as here, plaintiffs face or expect to incur an out
of pocket loss, such a loss equates with an ascertainable
loss sufficient to support liability under the CFA.[14]

97. In addition, plaintiffs seek a statutory refund – that is,
relief pursuant to the CFA's refund provision, which
states: "Any person violating the provisions of the within
act shall be liable for a refund of all moneys acquired by
means of any practice declared herein to be unlawful.[15]   The
refund of moneys herein provided for may be recovered in a
private action or by such persons authorized to initiate

---

[13] *Byrne v. Weichert Realtors*, 290 N.J. Super. 126 (App. Div.
1996); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994); N.J.S.A.
56:8-2; N.J.S.A. 56:8-19.
[14] See *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994); *Thiedemann
v. Mercedes-Benz USA*, 183 N.J. 234 (2005).
[15] N.J.S.A. 56:8-2.11.

actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 et

seq.).[16]"

98. The New Jersey Supreme Court explained the separate cause

of action available for refunds as follows: "The CFA vests

the Attorney General with jurisdiction to enforce its

provisions through a variety of mechanisms, N.J.S.A. 56:8-3

to -8, -11, -15 to -18, & -20, but it also provides

individual consumers with a cause of action to recover

refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble damages

for violations, whether in good faith or otherwise,

N.J.S.A. 56:8-19."[17]

99. Those seeking a statutory refund under the CFA are not

required to prove an ascertainable loss because under the

CFA's refund provisions, any party violating the CFA is

liable for a refund of all money they acquired by means of

the violation. For, since the refund provisions do not

refer to the ascertainable loss requirement of N.J.S.A.

56:8-19, the refund provision is independent of that

---

[16] N.J.S.A. 56:8-2.12.  The last reference in this provision to
"P.L.1975, c. 376 (C. 40:23-6.47 et seq.)" refers to actions by
the offices of the Department of Consumer Affairs.
[17] *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255
(1997).

requirement. "The refund provision is a statutory remedy, not based on the proving of any damages."[18]

100.    The refund provisions allow CFA claimants to recover a refund where they prove a deceptive business practice but are unable to prove an ascertainable loss.  This view is consistent with caselaw holding that the CFA's application is not limited only to situations where the attempt to deceive succeeded or actually resulted in injury.[19]

101.    Proof of this view is indicated by the respective dates of the CFA's amendment in 1971 allowing a private cause of action for treble damages if ascertainable loss is proven versus the 1979 amendment expressly providing for a separate private cause of action to recover refunds. The Legislature is presumed to be aware of existing legislation at the time a statute is enacted[20] and "[i]f the plain language leads to a clear and unambiguous result, then our interpretative process is over."[21] The Legislature clearly

---

[18]. *Artistic Lawn & Landscape Co., Inc. v. Smith*, 381 N.J. Super. 75, 89 (Law Div. 2005).
[19]. *Hyland v. Zuback*, 146 N.J. Super. 407, 415 (App. Div. 1976).
[20]. *Township of Mahwah v. Bergen Cnty. Bd. of Taxation*, 98 N.J. 268, 279, *cert. denied sub nom. Borough of Demarest v. Twp. of Mahwah*, 471 U.S. 1136 (1985).
[21] *David Spade v. Select Comfort Corp.*, 232 N.J. 504 (2018)(quoting *Johnson v. Roselle EZ Quick LLC*, 226 N.J. 370, 386 (2016) (quoting *Richardson v. Bd. of Trs., PFRS*, 192 N.J. 189, 195 (2007)).

envisioned a separate cause of action for penalties;

otherwise the Legislature would not have included the

reference to the private cause of action in the CFA's

penalty subsections.

102. Therefore, a CFA claimant is "entitled to the refund

regardless of whether he suffered any ascertainable loss.

There is no causal relationship needed to be eligible for

a refund."[22]

103. To recover a refund from a merchant, the CFA claimant

need only prove that the merchant acquired the money

sought by means of any practice violating the CFA.[23]

104. The party receiving a CFA refund is also entitled to a

mandatory award of counsel fees, filing fees and costs.[24]

105. However, treble damages may not be available in New

Jersey state court on money refunded pursuant to the CFA's

refund provisions.[25]

---

[22]. *Artistic Lawn & Landscape Co., Inc. v. Smith*, 381 N.J. Super.
75, 89 (Law Div. 2005); accord *Block v. Plosia*, 390 N.J. Super.
543, 551 (App. Div. 2007).
[23]. N.J.S.A. 56:8-2.11.
[24]. *Artistic Lawn & Landscape Co., Inc. v. Smith*, 381 N.J. Super.
75, 89 (Law Div. 2005) (citing *BJM Insulation & Constr., Inc. v.
Evans*, 287 N.J. Super. 513 (App. Div. 1996)).
[25]. See *Artistic Lawn & Landscape Co. v. Smith*, 381 N.J.
Super. 75, 77, 80 (Law Div. 2005), an unlicensed Landscape
irrigation contractor sued a consumer to collect an unpaid bill
for a sprinkling system and the consumer counterclaimed,
alleging that the contract was not enforceable because the
contractor violated the CFA. While entitled to a refund,
claimant failed to prove ascertainable loss and the court

106. Plaintiffs also seek a refund and/or other equitable relief pursuant to N.J.S.A. 2A:32-1, which states: "(w)henever there is a fraud in the execution or consideration of a contract, the person defrauded at any time thereafter may institute a civil action, to recover the money owing on such contract although, by its terms, the debt contracted or the money secured to be paid thereby is not then due or payable; and the person defrauded may, upon discovery of the fraud, either rescind the contract entirely and recover the money or property obtained by the fraud, or, sue on the contract to recover thereon."[26]

107. In this regard, the CFA expressly provides that the rights, remedies and prohibitions provided by the CFA are in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or New Jersey statutes.[27] The CFA should not be construed to deny, abrogate or impair any such common law or State statutory right, remedy or prohibition, such as that afforded to fraud victims under N.J.S.A. 2A:32-1.[28]   Therefore,

---

refused to award the consumer treble damages by trebling the amount of the refund.

[26]. N.J.S.A. 2A:32-1.

[27]. N.J.S.A. 56:8-2:13; *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255 (1997).

[28]. N.J.S.A. 56:8-2:13; *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255 (1997).

plaintiffs may seek relief both pursuant to the CFA and
N.J.S.A. 2A:32-1.

**Plaintiffs' Counsel Serve As Private Attorneys General**

108. Plaintiffs hired counsel and one or more statutes pled
herein provide for fee shifting for parties hiring counsel
and prevailing under said statutes.

109. Accordingly, by representing plaintiffs, plaintiffs'
counsel serve plaintiffs as private attorneys general.[29]
Otherwise, private claimants (such as those under the
consumer protection statutes pled herein) would have to pay
attorneys' fees and incur potentially considerable expense
for a potentially small recovery.[30]

110. Since counsel for private fee shifting claimants such as
plaintiffs' counsel act as private attorneys general,
plaintiffs bringing a private action such as this case may
seek the remedy of counsel fees for the statutory
violations pled herein not only as those violations affect
the named plaintiffs but also for other claimants.[31]

---

[29] See *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255,
268 (1997).

[30] See, e.g., *Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 470
(App. Div. 1982)(discussing fee shifting under the CFA); *Chattin
v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 610 (App. Div.
1990), aff'd o.b., 124 N.J. 520 (1992) (citing *Coleman v. Fiore
Bros.*, Inc., 113 N.J. 594, 598 (1989))(same); *Furst v. Einstein
Moomjy*, 182 N.J. 1, 21 (2004)(same).

[31] See, e.g., *Laufer v. U.S. Life Ins. Co. in N.Y.*, 385 N.J.
Super. 172, 185 (App. Div. 2006).

## CLASS ACTION CERTIFICATION ALLEGATIONS

111. Plaintiffs repeat all paragraphs set forth above as if set forth herein in full.

112. Plaintiffs bring this action pursuant to Rule 4:32 on behalf of plaintiffs and on behalf of the class members, with the class being composed of a class of all other New Jersey citizens similarly situated to plaintiffs and suffering similar harms.

113. **Plaintiffs propose a class as follows: all New Jersey citizens who both purchased "household furniture" as defined by the HFR (which "includes, but is not limited to, furniture, major electrical appliances, and such items as carpets and draperies," see N.J.A.C. 13:45A-5.1) from defendants' retail stores located in New Jersey and who received a contract with the same language as the contract that misstates defendants' responsibilities to plaintiffs under the HFR as stated above from a period six years prior to the filing of the complaint.**

114. Defendants' actions are not isolated.

115. Defendants' actions have affected similarly situated individuals throughout the State of New Jersey.

116. Defendants acted on grounds generally applicable to the class members, thereby justifying relief against defendants for the class members as whole.

117. Plaintiffs are members of the class that they seek to represent.

118. The class is believed to number thousands of persons and their joinder is impracticable, except by via a class action.

119. The disposition of the claims of the class in a class action will benefit both the parties and the Court.

120. There are questions of law and/or fact common to the class predominating over any question affecting only individual class members as to whether defendants are liable to plaintiffs for violation of New Jersey law. **For instance, are defendants liable for the violations pled in the complaint?**

121. Class certification is also appropriate because defendants acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to plaintiffs and the class members.

122. Specifically, plaintiffs seek injunctive relief via a court judgment or order requiring an end to the unlawful practices and/or the issuance of a corrective notice to the class members.

123. Plaintiffs' claims are typical of the claims of the class insofar as named class representatives and the members of the class were similarly exposed to the statutory harms

alleged herein and were similarly injured and/or face similar risks therefrom.

124. The proposed class representatives state a claim upon which relief can be granted that is typical of the claims of absent class members.

125. If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

126. Plaintiffs will fairly and adequately represent the interests of the class insofar that the plaintiffs' claims are typical of those of the class members.

127. Plaintiffs are committed to the vigorous representation of the class members.

128. Plaintiffs retained counsel experienced and skilled in consumer law and class action litigation.

129. Counsel agreed to advance the costs of the litigation contingent upon the outcome.

130. Plaintiffs have no conflict of interest in the maintenance of this class action.

131. If the matter is maintained as a class action, it shall provide for a fair and efficient adjudication of this dispute.

132. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual plaintiffs as class representatives.

133. Contrawise, especially in view of the small dollar amounts in controversy relative to the individual plaintiffs' claims, it would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.

134. Further, the maintenance of separate actions in lieu of the instant proposed class action would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

135. Contrawise, a single class action such as the instant proposed class action can determine the rights of all class members while economizing judicial resources.

136. Moreover, as plaintiffs invoked consumer protection statutes and have pled a prima facie case for the violation of same, the policy goals behind those consumer protection statutes provide further reason for permitting class action certification of the instant action.

137. The benefits of adjudicating this case via a class action far outweigh any difficulties in management of the case as a class action.

138. Class action treatment of this case is a superior method for the fair and efficient adjudication of this dispute because:

- individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

- as a result, there has been no other litigation over the controversies herein;

- individual members of the class have no interest in prosecuting and controlling separate actions; and

- the proposed class action is manageable.

139. This matter does not invoke CAFA, since the sums sought by the class members and the matter in controversy does not exceed the sum or value of $5,000,000, exclusive of interest and costs.

**COUNT 1**

**EQUITABLE FRAUD FOR PLAINTIFFS AND THE CLASS**

**(Against SCC only)**

140. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

141. As discussed above, the contract contains language that affirmatively misstates plaintiffs' rights and defendants' obligations under New Jersey law, such as the HFR and the illegal exculpatory clauses.

142. By issuing the illegal contract to plaintiffs, defendants committed equitable fraud.

143. To make out a prima facie case of equitable fraud, there must be "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party."[32]

144. Every fraud essentially involves the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith.[33]

145. To deter intentional misrepresentations, public policy dictates that those who commit such torts face liability for their misconduct.[34]

---

[32] *Liebling v. Garden State Indem.*, 337 N.J. Super. 447, 453 (App. Div.) (citing *Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619*, 624 (1981)), certif. denied, 169 N.J. 606 (2001); Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 117 A.3d 1221 (N.J., 2015) quoting *First Am. Title Ins. Co. v. Lawson,* 177 *N.J.* 125, 136–37, 827 *A.* 2d 230 (2003) (internal quotation marks omitted)).

[33]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981) (citing 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* 421 (5th ed. 1941)).

[34]. *Grow Farms Corp. v. Nat'l State Bank, Elizabeth*, 167 N.J. Super. 102, 109 (Law Div. 1979).

146. Fraud may be either actual or constructive. The distinguishing factor is the element of untruth between the parties required in the former but not in the latter."[35]

147. "Silence in the face of an obligation to speak may be fraud."[36]

148. For example, here, the HFR mandated that defendants refrain from making specific disclaimers in the contract and by refraining from putting language in the contract that misstated plaintiffs' rights and defendants' obligations under the HFR to plaintiffs.

149. An example of equitable fraud would be where a party permits another to sign a contract knowing that the signer is under a misapprehension as to the contract's terms.[37]

150. Also, one committing fraud cannot defend themselves by alleging that the victim should have been more circumspect or astute.[38]

151. To support common law fraud claims, a misrepresentation must be as to a presently existing or past fact.[39]

---

[35]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981) (citing 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* at 625-26 (5th ed. 1941)).
[36]. *Berman v. Gurwicz*, 178 N.J. Super. 611, 619 (Ch. Div. 1981).
[37].*See Grossman Furniture Co. v. Pierre*, 119 N.J. Super. 411 (Dist. Ct. 1972).
[38].*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 n. 1 (1981) (citing *Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 N.J. Super. 332, 342 (App. Div.), *aff'd*, 78 N.J. 320 (1978)).
[39]. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super.

152. In the contract, defendants made one or more material misrepresentations about the contract and plaintiffs' rights and defendants' obligations to plaintiffs under the contract and pursuant to New Jersey law.[40]

153. The misrepresentations were of a presently existing or past fact about plaintiffs' rights and defendants' obligations to plaintiffs under the contract. [41]

154. A defendant's misrepresentation need not be communicated directly to a plaintiff for a fraud action to lie.[42] Under the principle of indirect reliance, a plaintiff can prove fraud "when he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment." [43]

155. Equitable fraud doesn't require defendants to have knowledge of the fraud or an intention to benefit therefrom.[44]

---

369, 380 (App. Div. 1960).
[40]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).
[41]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).
[42]  *Kaufman v. I-Stat Corp., 165 N.J. 94*, 108 (2000).
[43]  *Kaufman v. I-Stat Corp., 165 N.J. 94*, 108 (2000) citing *Judson v. Peoples Bank & Trust Co.*, 25 N.J. 17, 27 (1957)).
[44] *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 625 (1981)("The elements of scienter, that is, knowledge of the

156. A misrepresentation of a material fact even though innocently made may support an equitable fraud claim.[45] Therefore, an equitable fraud claimant may prevail even where the misrepresentation was innocent.[46]

157. Therefore, an action for equitable fraud does not require proof that defendants know of the falsity of the statements contained in the contract.[47]

158. "In other words, a party seeking rescission based on equitable fraud need not prove 'knowledge of the falsity and an intention to obtain an undue advantage therefrom.'"[48]

---

falsity and an intention to obtain an undue advantage therefrom, see Pomeroy, *supra* at 422; *Gordon v. Schellhorn*, 95 N.J. Eq. 563, 573-74, 123 A. 549 (Ch. 1924), are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. *Equitable Life Assurance Soc'y v. New Horizons, Inc.*, 28 N.J. 307, 314, 146 A.2d 466 (1958). See also *Metropolitan Life Ins. Co. v. Tarnowski*, 130 N.J. Eq. 1, 3, 20 A.2d 421 (E. & A. 1941); *Hernig v. Harris*, 117 N.J. Eq. 146, 150-51, 175 A. 169 (Ch. 1934). Thus, '(w)hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law.' 3 J. Pomeroy, *supra*, at 486-88.").

[45] *Formosa v. Equitable Life Assur. Soc. of U.S.*, 398 A.2d 1301, 166 N.J. Super. 8 (App. Div. 1979)

[46] *Metro. Life Ins. Co. v. Alvarez.*, 133 N.J.Eq. 65, 30 A.2d 297 (Ch. 1943).

[47] *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 148 (2015) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 625 (1981)).

[48]. *Liebling v. Garden State Indem.*, 337 N.J. Super. 447 (App. Div. 2001), *certif. denied*, 169 N.J. 606 (2001) (citing *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 609 (1989) (quoting *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624-25 (1981)).

Even an innocent misrepresentation shall suffice to support an equitable fraud rescission remedy.[49]

159. Nevertheless, defendants had constructive if not actual knowledge of the misrepresentations and was obliged under New Jersey law to be familiar with the statutes and regulations governing defendants' business and to refrain from making the previously described affirmative misstatements.[50]

160. As to the element of reliance, by preparing and issuing the contract to plaintiffs and by being charged with knowledge of the HFR and the CFA, defendants deliberately made false representations about plaintiffs' rights and defendants' obligations to plaintiffs under New Jersey law and the contract, intending that those false representations be communicated to others for the purpose of inducing reliance; therefore, the reliance element of the common law fraud claim may be satisfied by proof of indirect reliance.[51]

---

[49]. *Liebling v. Garden State Indem.*, 337 N.J. Super. 447 (App. Div. 2001), *certif. denied*, 169 N.J. 606 (2001) (citing *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 635 (1995)("[e]ven an innocent misrepresentation can constitute equitable fraud justifying rescission.").

[50] See *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994).

[51]. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 47 (App. Div. 2000).

161. Moreover, when purchasing the contract, plaintiffs
     detrimentally relied on the misrepresentations, as
     plaintiffs expected that the contract was drafted in
     compliance with applicable New Jersey law (including but
     not limited to the HFR) and would not have purchased the
     contract if it did not so comply.[52]

162. Nor is it necessary for plaintiffs to allege that
     plaintiffs scrutinized the contract since defendants were
     expressly required under the HFR to prepare the contract in
     compliance therewith.  Where one party to an agreement
     entrusts the other with the obligation of reducing it to
     writing, that party has a right to expect that the contract
     was correctly prepared.  Therefore, plaintiffs are within
     their rights to rely on defendants to issue warranties
     complying with the HFR and other applicable New Jersey
     law.[53]

163. Plaintiffs aren't required to prove that plaintiffs'
     reliance on defendants' conduct was reasonable or that

---

[52]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).

[53]*Berman v. Gurwicz*, 178 N.J. Super. 611, 618-19, 429 A.2d 1084 (Ch. Div.1981)(buyers of condominiums claiming damages for legal fraud would not be barred from seeking relief for failing to examine their agreements if they relied on defendants to prepare accurate documents reflecting their prior understanding. Such reliance, it was held, gives rise to an obligation to disclose.). See also *Kero v. Terminal Constr. Co. 6 N.J. 361*, 369, 78 A.2d 814 (1951).

plaintiffs should have compared the contract to the HFR or other laws or regulations before signing it because "[o]ne who engages in fraud…may not urge that one's victim should have been more circumspect or astute."[54] A recipient of a misrepresentation is justified in relying on that misrepresentation even though an investigation might have revealed its falsity.[55]

164. Here plaintiffs aren't experts in examining business documents and therefore, the falsity of the statements in the contract would not have been obviously fraudulent to the plaintiffs. [56]

165. Further, arguments that plaintiffs never attempted to cancel the sale fail to defeat plaintiffs' reliance claims because, as reflected by the HFR, plaintiffs had every right to rely on defendants' affirmative misrepresentations.

---

[54]*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 (1981)(rejecting the defendant's argument that "plaintiff's reliance was unreasonable.")(citing *Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 N.J. Super. 332, 342, 382 A.2d 933 (App. Div.), aff'd, 78 N.J. 320, 394 A.2d 360 (1978)).  Accord *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 560 A.2d 655 (1989).
[55] *Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171*, 181 (App. Div. 2012).  See also *Byrne v. Weichert Realtors, 290 N.J. Super. 126*, 130 (App. Div.), certif. denied, 147 N.J. 259 (1996).
[56] *Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171* (App. Div. 2012).

166. It is unfair for defendants to ignore plaintiffs' rights and defendants' obligations under the HFR and/or other applicable New Jersey regulations and statutes by preparing and issuing warranties in New Jersey to New Jersey citizens with appliances that violate New Jersey law.

167. Here, the price that plaintiffs paid for the bed supports plaintiffs' claim of damages, as plaintiffs seek a refund of that price.[57]

168. Had plaintiffs had the benefit of full disclosure of plaintiffs' rights and defendants' obligations under the contract, plaintiffs wouldn't have purchased the bed with its faulty contract.

169. However, to prove an equitable fraud claim, plaintiffs are not required to prove that plaintiffs suffered any losses whatsoever.   An equitable fraud claimant doesn't necessarily have to prove actual loss in the financial sense, because "equity looks not to the loss suffered by the victim but rather to the unfairness of allowing the perpetrator to retain a benefit unjustly conferred."[58]

---

[57] See *Bonnco Petrol, Inc*. *v. Epstein*, 115 N.J. 599, 560 A.2d 655 (1989)("the $10,000 Bonnco paid for the option should be returned as part of the rescission remedy.").

[58]. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 (1981) (citing W. Prosser, *The Law of Torts* 732 (4th ed. 1971)).

170. The relief available to equitable fraud victims includes rescission.[59]

171. "The object of equitable remedies such as reformation and rescission is to restore the parties to the status quo ante and prevent the party who is responsible for the misrepresentation from gaining a benefit."[60]

172. "Rescission voids the contract ab initio, meaning that it is considered `null from the beginning' and treated as if it does not exist for any purpose."[61]

### COUNT 2

### RELIEF PURSUANT TO N.J.S.A. 2A:32-1 FOR PLAINTIFFS AND THE CLASS

### (Against SCC only)

173. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

---

[59]. *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 (1981); *see also Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 635 (1995); *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599 (1989) (both rescission and reformation are remedies available for equitable fraud) (citing *Enright v. Lubow*, 202 N.J. Super. 58, 72 (App. Div. 1985), *certif. denied*, 104 N.J. 376 (1986); *Foont-Freedenfeld v. Electro-Protective*, 126 N.J. Super. 254, 257 (App. Div. 1973), *aff'd*, 64 N.J. 197 (1974); *Gherardi v. Trenton Bd. of Educ.*, 53 N.J. Super. 349, 366 (App. Div. 1958)).
[60]. *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599 (1989) (citing *Enright v. Lubow*, 202 N.J. Super. 58, 72 (App. Div. 1985), *certif. denied*, 104 N.J. 376 (1986)) (citing W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on The Law of Torts* § 105, 729 (5 ed. 1984)).
[61] . *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136-137 (2003).

174. This count is brought on behalf of plaintiffs individually and the class.

175. Plaintiffs seek relief pursuant to N.J.S.A. 2A:32-1, titled "Remedies of person defrauded", which states: "Whenever there is fraud in the execution or consideration of a contract, the person defrauded at any time thereafter may institute a civil action, to recover the money owing on such contract although, by its terms, the debt contracted or the money secured to be paid thereby is not then due or payable; and the person defrauded may, upon discovery of the fraud, either rescind the contract entirely and recover the money or property obtained by the fraud, or, sue on the contract to recover thereon.  The plaintiff in such an action shall have all rights to which he would be entitled if the debt or obligation was due and payable at the time of the commencement of the action."

## COUNT 3

### DECLARATORY JUDGMENT FOR PLAINTIFFS AND THE CLASS

### (Against SCC only)

176. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

177. This count is pled on behalf of plaintiffs individually and the class.

178. This count is directed against all defendants.

179. Plaintiffs seek a declaratory judgment that the contract is contrary to New Jersey law.  See N.J.S.A. 2A:16-59.

180. The UDJL's purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.   N.J.S.A. 2A:16-51.

181. The UDJL is a remedial device designed to expedite the definitive establishment of private rights and duties thereby forestalling the emergence of costly and cumbersome proceedings[62].

182. The UDJL is liberally construed and administered. N.J.S.A. 2A:16-51.

183. Plaintiffs are persons as defined by the UDJL – "any person, partnership, joint stock company, unincorporated association or society, and municipal or other corporation of any character." N.J.S.A. 2A:16-50.

184. This matter is ripe for adjudication via the UDJL because there is a justiciable controversy between interested and adverse parties upon facts that are neither future, contingent, nor uncertain and all parties affected are joined to the controversy.[63]

---

[62] *Middlesex County Sewerage Authority v. Middlesex*, 74 N.J. Super. 591, 181 (Law Div. 1962), affirmed by 79 N.J. Super. 24 (App. Div. 1963).
[63] *New Jersey Mfrs. Ins. Co. v. McDermott*, 201 N.J. Super. 251 (Law Div. 1985); N.J.S.A. 2A:16-56.

185. Pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50, et seq. (UDJL), relief based on a declaratory judgment may be granted whenever necessary or proper, by application to a court having jurisdiction to grant the relief.

186. Under the UDJL, a person interested under a written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal lessee, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, lessee, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.  N.J.S.A. 2A:16-53.

187. Plaintiffs qualify as such persons.

188. Under the UDJL, "[a] contract may be construed either before or after a breach thereof.

189. Under the UDJL, "[t]he enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.  N.J.S.A. 2A:16-52.

190. Under the UDJL, "[a] declaratory judgment may be either affirmative or negative in form and effect, and shall have the force and effect of a final judgment."[64]

191. Pursuant to the UDJL, plaintiffs seek a declaratory judgment that the contract affirmatively misstates plaintiffs' rights and defendants' obligations under the HFR and that the contract is null and void and that plaintiffs are entitled to a refund of the bed's purchase price.

**COUNT 4**

**CFA VIOLATION SEEKING TREBLE DAMAGES**

**FOR PLAINTIFFS AND THE CLASS**

**(Against SCC only)**

192. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

193. This count is pled on behalf of plaintiffs and the class.

194. As discussed above, the contract contains language that affirmatively misstates plaintiffs' rights and defendants' obligations under New Jersey law.

195. Defendants issued plaintiffs a contract that fails to conform to applicable New Jersey law and by issuing the contract to plaintiffs in connection with the sale of the

---

[64] N.J.S.A. 2A:16-56.  See also *Straut v. Calissi*, 293 F. Supp. 1339 (D.N.J. 1968).

bed, defendants committed per se and section 2 CFA violations.

196. Plaintiffs' ascertainable loss of money or property proximately caused by the misconduct is the bed's purchase price. Exhibit 1.

197. Plaintiffs also seek equitable relief pursuant to N.J.S.A. 2A:32-1 and the causes of action pled herein, including but not necessarily limited to a statutory refund pursuant to N.J.S.A. 2A:32-1 and equitable cancellation of debts that are the goods of fraud pursuant to *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994) and N.J.S.A. 2A:32-1 and the refund remedy provided for via the CFA (a remedy which is not predicated upon an ascertainable loss of money or property).  N.J.S.A. 56:8-2.11-12.

198. Plaintiffs bring this action pursuant to N.J.S.A. 56:8-19 and in accordance therewith, seek statutory treble damages, attorney's fees, filing fees, court costs, a refund of all monies paid to date to defendants and other legal and equitable relief as provided under said statute.

199. Plaintiffs also seek injunctive relief requiring defendants to cease the unlawful act of issuing warranties to New Jersey citizens with language identical to the contract because that contract contains language that

affirmatively misstates plaintiffs' rights and defendants'
obligations under New Jersey law.

200. Plaintiffs previously complied with the requirements of
N.J.S.A. 56:8-20, et seq.

### COUNT 5

### CFA VIOLATION SEEKING REFUND REMEDIES

### FOR PLAINTIFFS AND THE CLASS

### (Against SCC only)

201. Plaintiffs repeat all of the allegations contained in the
previous paragraphs as if fully set forth herein.

202. This count is pled on behalf of plaintiffs and the class.

203. As discussed above, the contract contains language that
affirmatively misstates plaintiffs' rights and defendants'
obligations under New Jersey law.

204. Defendants issued plaintiffs a contract that fails to
conform to applicable New Jersey law and by issuing the
contract to plaintiffs relative to the sale of an
appliance, defendants committed per se and section 2 CFA
violations.

205. Plaintiffs seek refund remedies and equitable relief
pursuant to N.J.S.A. 2A:32-1 and the causes of action pled
herein, including but not necessarily limited to a
statutory refund pursuant to N.J.S.A. 2A:32-1 and the
statutory refund remedy provided for via the CFA pursuant

to N.J.S.A. 56:8-2.11-12 - a remedy which is not predicated upon an ascertainable loss of money or property.

206. Plaintiffs also seek injunctive relief requiring defendants to cease the unlawful act of issuing illegal warranties to New Jersey citizens with language identical to the contract because that contract contains language that affirmatively misstates plaintiffs' rights and defendants' obligations under New Jersey law.

207. Plaintiffs also seek attorney's fees, filing fees, court costs and other legal and equitable relief as provided under said statute.

208. Plaintiffs previously complied with the requirements of N.J.S.A. 56:8-20, et seq.

## PRAYER FOR RELIEF COMMON TO ALL COUNTS

209. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

WHEREFORE, plaintiffs demand judgment against all defendants for statutory/common law damages/remedies pursuant to the causes of action pled in this pleading, any attorney's fees, interest and costs of suit recoverable pursuant to any statutes or court rules pled herein and any other legal and equitable relief that the Court deems appropriate, including but not necessarily limited to refunds, a declaratory judgment and injunctive relief to end the previously described illegal misconduct.

## JURY DEMAND

Relative to all issues pled in the instant action that are so triable, the parties submitting this pleading for filing hereby demand a trial by six (6) jurors.

## DESIGNATION OF TRIAL COUNSEL

**LEWIS G. ADLER, ESQ.** is designated as trial counsel in this matter for the parties submitting this pleading for filing.

## L.R.CIV.P. 11.2 CERTIFICATION

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.  The basis of my personal knowledge is as follows:  my office maintains a file relative to the aforesaid representation and I have become familiar with certain facts of this dispute from my handling of said file.

4. The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true and correct.

```
EXECUTED ON:  August 16, 2018     Respectfully submitted,
                                  /s/ LEWIS G. ADLER
                                  _____
                                  LEWIS G. ADLER
                                  26 Newton Ave.
                                  Woodbury, NJ 08096
                                  Tel. #: (856) 845-1968
                                  Fax #: (856) 848-9504
                                  Co-counsel for plaintiffs
                                  Email: lewisadler@verizon.net
```

## CERTIFICATION OF SERVICE OF PLEADING

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.  The basis of my personal knowledge is as follows:  my office maintains a file relative to the aforesaid representation and I have become familiar with certain facts of this dispute from my handling of said file.

4. On the below referenced date, I served or caused to be served by my office a copy of this document on the below referenced counsel/parties via the below referenced mediums:

| Parties and/or Counsel: | FOX ROTHSCHILD LLP<br>Karen A. Confoy, Esquire<br>Princeton Pike Corporate Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648-2311<br>Co-counsel for Defendants SELECT COMFORT<br>CORPORATION D/B/A SLEEP NUMBER |
| --- | --- |

|  | FOX ROTHSCHILD LLP<br>Andrew S. Hansen, Esquire (*pro hac vice*)<br>Campbell Mithun Tower, Suite 2000<br>222 South Ninth Street<br>Minneapolis, MN 55402-3338<br>Co-counsel for Defendants SELECT COMFORT<br>CORPORATION D/B/A SLEEP NUMBER |
|---|---|
| Mediums: | (check all applicable boxes below) |
|  | X Electronically/E-filing |
|  | First class mail |
|  | Certified Mail, Return Receipt Requested |
|  | Same Day Courier |
|  | Overnight Courier |

EXECUTED ON:  August 16, 2018      Respectfully submitted,
                                   /s/ LEWIS G. ADLER
                                   LEWIS G. ADLER
                                   26 Newton Ave.
                                   Woodbury, NJ 08096
                                   Tel. #: (856) 845-1968
                                   Fax #: (856) 848-9504
                                   Co-counsel for plaintiffs
                                   Email:  lewisadler@verizon.net

        CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true

and correct.

EXECUTED ON:  August 16, 2018      Respectfully submitted,
                                   /s/ LEWIS G. ADLER
                                   LEWIS G. ADLER
                                   26 Newton Ave.
                                   Woodbury, NJ 08096
                                   Tel. #: (856) 845-1968
                                   Fax #: (856) 848-9504
                                   Co-counsel for plaintiffs
                                   Email:  lewisadler@verizon.net